WRAY, Plaintiff in Error, v. STATE, Defendant in Error.†

Court of Appeals

*No. 77–689. Submitted on briefs September 12, 1978.—Decided October 18, 1978.*
(Also reported in 275 N.W.2d 731.)

† Petition to review granted January 29, 1979.

For the plaintiff in error the cause was submitted on the briefs of *Mark Lukoff,* first assistant state public defender, with whom on the brief was *Howard B. Eisenberg,* state public defender.

For the defendant in error, the cause was submitted on the briefs of *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

Before Decker, C.J., Cannon, P.J., and Robert W. Hansen, Reserve Judge.

DECKER, C.J.   Carl Dennis Wray was convicted of burglary, party to a crime, contrary to secs. 943.10 (1) (a) and 939.05, Stats., following a jury trial. Wray was sentenced to an indeterminate term not to exceed four years in the Wisconsin State Prisons. Writs of error were issued to review the judgment of conviction and an order denying defendant's motion for postconviction relief pursuant to sec. 974.06, Stats.

Does the "party to a crime" jury instruction, Wis. J. I.—Criminal 400 applied to the facts of this case deny the defendant a constitutional right to a unanimous verdict? We hold it does not.

Responding to an alarm, Officer Michael Clark arrived at Columbia Family Clothiers and Jewelers, 1207 West Vliet Street, Milwaukee, at 5 a.m. Upon arrival, Clark heard an alarm ringing and heard noises in the building next door. When two men ran past the alley, Clark pursued and arrested the defendant one-half block away.

One of the two fleeing persons carried clothing. Before his arrest Wray dropped a pair of gloves. Upon making the arrest, Clark noticed fiber material on the defendant's clothing. Inspection of the interior of the building at 1207 West Vliet Street revealed to Clark: a hole in the roof, a knotted rope hanging from the hole, tools on the floor and a ladder leading to the hole. Officer Robert Schulz seized fiber material (originally from the roof) from the interior floor, and a tar-like substance from the roof. Schulz also seized defendant's clothing because he noticed the fiber material on it. A forensic chemist testified that the defendant's gloves and clothing had the tar-like and fiber substances on them consistent with the material found in the building.

The foregoing facts were presented by the state and generally represent the evidence in support of its charge of burglary, party to a crime.

Wray testified that Ragland, the other fleeing person arrested with Wray, had visited Wray's home between 2 and 3 a.m. before the burglary. Ragland discussed plans for the burglary with two others in Wray's presence. Ragland and the others left Wray's home and about one-half hour later Wray walked to the burglary scene to see whether the others had committed the burglary as planned. Entering a vacant house on North 12th Street, Wray proceeded up an interior stairway, using matches for light, until he reached the attic. He climbed out the attic window and, standing on its sill, boosted himself up to the roof of the burglarized building. In an "army crawl" he crept across the roof to some debris and discovered a hole in the roof. Wray put his head down in the hole so his voice would be directed into the building and called for Ragland. Receiving no response, he retraced his entry route and was standing on the corner of North 12th and West Vliet Streets when the burglar alarm sounded. At the time he was talking

to Sheila Booker who was a passenger in the car of a Mr. Williams. Williams had been called as a witness by Wray but within a few questions it was apparent that he remembered nothing regarding this incident and Wray's trial counsel quickly excused him. Wray described his trip to the roof as one "made out of idle curiosity."

Wray said that after the alarm sounded, three persons fled from the scene. Two fled in one direction and Ragland fled in another direction. Wray fled with Ragland. His affinity for flight with Ragland was unexplained. Wray further testified that a police officer fired his gun, Wray tripped over some clothes, possibly dropped by Ragland, and Ragland fell on top of him. The officer made the arrest. Wray denied carrying gloves; he responded to cross-examination as follows:

Q. Now, you had this fiber material on your head, your hair, your jacket and your trousers, didn't you?
A. I had it on my clothes, clothing, I guess you might say it could have been in my hair. I don't know.
Q. Pardon?
A. It could have been in my hair.
Q. You don't deny that, do you?
A. No.

Wray's defense that he was a curious bystander was rejected by the jury and he makes no complaint about that on appeal. The evidence presented at trial is sufficient to support a jury finding that he was a party to a conspiracy to commit the burglary or that he was a direct participant in the burglary.

The pertinent portions of Wis. J.I.—Criminal 400 were given by the trial court:

The defendant is charged with burglary, party to a crime. 939.05 of the Criminal Code provides whoever is concerned in the commission of a crime may be charged with and convicted of the commission of a crime although he did not directly commit it.

As applicable in this case a person is concerned in the commission of a crime if he directly commits the crime or if he is a party to a conspiracy with another to commit it. [1]

The instruction was repeated when the jury requested reinstruction on "party to a crime."

In his postconviction motion Wray focused his complaint upon the second paragraph of the pertinent portion of the instruction as follows:

At no time was the jury ever instructed that all twelve jurors must either agree that I directly committed the crime or that all twelve jurors must agree that I was a conspirator, before the jury could find me guilty.

Wray grounds his claim that the jury must unanimously agree on whether he directly committed the crime or was a conspirator upon *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977).

Franklin Delano Gipson was charged with violating a federal statute[2] which prohibits receiving, concealing, storing, bartering, selling or disposing of a motor vehicle involved in interstate commerce, with knowledge that it was stolen. Evidence of all the six prohibited acts was presented by the prosecutor. After deliberating for an hour, the jury requested additional instructions. The judge responded with an instruction that authorized the jury to find Gipson guilty without unanimity as to the act or acts committed. The instruction was:

---

[1] Because of the facts of this case the trial court could, as it did, omit an optional paragraph of the pattern instruction that would have advised the jury that pursuant to sec. 939.05, Stats., the defendant could be found guilty if he intentionally aided or abetted the commission of the charged crime. Our opinion would not change if the defendant would have been charged as an aider and abetter and the evidence justified giving the additional instruction.

[2] 18 U.S.C. §2313.

A third question that may be the one that the jury is really asking is, must there be an agreement by all twelve jurors as to which act of those several charged in Count Two, that the defendant did. For example, would it be possible for one juror to believe that the Defendant had stored property, and another juror to believe that he had received property, and so on. If all twelve agreed that he had done some one of those acts, but there was not agreement that he had done the same act, would that support a conviction? The answer is yes. If each of you is satisfied beyond any reasonable doubt that he did any one of those acts charged, and did it with the requisite state of mind, then there would be a unanimous verdict, and there could be a return of guilty under Count Two of the indictment, even though there may have been disagreement within the jury as to whether it was receiving or storing or what.

The *Gipson* court noted that the sixth amendment to the United States Constitution requires a unanimous verdict in a federal criminal trial, *Johnson v. Louisiana*, 406 U.S. 356 (1972); *Apodaca v. Oregon*, 406 U.S. 404 (1972), and we note that Wis. Const. art. I, sec. 5, imposes a similar requirement. The 5th Circuit then framed the controlling issue of the case:

[W]here a criminal statute provides a number of ways of satisfying the actus reus element of an offense, does a defendant's right to a unanimous jury verdict require all jurors to find that element present by reaching substantial agreement as to the facts that satisfy the element before they can return a verdict of guilty?

*Actus reus* has been used to describe the harm to the victim and society as well as the act itself.[3] We use the term to refer to the overt act or external or objective aspect of the crime as we believe the term was used by the *Gipson* court.

---

[3] J. Hall, *General Principles of Criminal Law*, 222–25 (2d ed. 1960).

Disclaiming "an attempt to breach the shroud surrounding jury deliberation,"[4] the *Gipson* court determined that the six prohibited acts fell into two distinct conceptual groupings, (1) receiving, concealing and storing, and (2) bartering, selling and disposing. Unanimity of the jury was required for either or both of the conceptual groupings. The court explained:

> Within each grouping, the acts are sufficiently analogous to permit a jury finding of the actus reus element of the offense to be deemed "unanimous" despite differences among the jurors as to which of the intragroup acts the defendant committed. This is so for two reasons. First, the acts within each grouping are not conceptually distinct. The single act of keeping a vehicle in a certain place may constitute both concealing and storing; or the single act of marketing a vehicle may simultaneously constitute bartering, selling, and disposing. Second, distinguishing among the acts within each grouping presents characterization problems. One juror may view a defendant's actions in housing a stolen vehicle as receiving, while another juror may conclude that the same actions constitute concealing or storing.

Although Wray did not timely object to the instruction as Gipson did, if that instruction misstates the law, the error is not waived. *Lambert v. State,* 73 Wis.2d 590, 607, 243 N.W.2d 524 (1976). A postconviction motion, sec. 974.06, Stats., may be utilized to raise an issue of constitutional dimension. *Loop v. State,* 65 Wis.2d 499, 501, 222 N.W.2d 694 (1974).

We find that a party to a crime instruction, as given here, which authorizes the jury to find Wray directly

---

[4] See sec. 906.06 (2), Stats.

committed the crime *or* conspired to commit the crime does not violate the rationale of *Gipson*.[5]

There is but one conceptual crime charged in the information-burglary. There are no common law crimes in Wisconsin; criminal offenses are exclusively statutory.[6] When the premises were entered without consent and with intent to steal, the offense was committed by Wray either directly or as a conspirator to commit the burglary.[7] Under the law of accomplice liability, sec. 939.05, Stats., it is immaterial to the offense whether its commission by Wray was direct or indirect. Common law accomplice liability[8] has given way to statutory reform.[9]

In *People v. Burgess*, 67 Mich. App. 214, 240 N.W.2d 485 (1976), a defendant complained that a trial court committed reversible error in instructing a jury on alternative theories—either as a principal or as an aider and abettor—without advising the jury that a verdict on either theory must be unanimous. We agree with the conclusion of the Michigan Court of Appeals.

---

[5] Our view is confirmed by a post-*Gipson* decision of the 5th Circuit, *United States v. Bolts*, 558 F.2d 316, 320–21 (1977) *cert. denied*, 434 U.S. 390 (1977), in which it was held that "where the indictment charged a conspiracy to commit violations of several related statutory provisions *in what was essentially one narcotics trafficking enterprise*, it was unnecessary that the verdict specify the particular statutory provision which an individual defendant conspired to violate." (Emphasis supplied.)

[6] Sec. 939.10, Stats.

[7] The sufficiency of the evidence to establish either direct commission of the crime or conspiracy to commit the crime is not challenged on this appeal.

[8] For a discussion of the procedural problems inherent in common law accomplice liability see LaFave & Scott, *Handbook of Criminal Law* §63, at 498 (1972).

[9] 2 Wharton's *Criminal Procedure* §284, at 112 (12th ed. 1975).

With the abolition of the common law distinction between a principal and an aider and abetter, the defendant cannot complain if some members of the jury found his participation in the crime to be more substantial than did the remaining members of the jury. p. 489[10]

Wisconsin follows the rule that a conspirator is liable as an accomplice. *Nye & Nissen v. United States,* 336 U.S. 613 (1949) ; *Pollack v. State,* 215 Wis. 200, 211–12, 253 N.W. 560 (1936) [overruled on other grounds, *State ex rel. Goodchild v. Burke,* 27 Wis.2d 244, 262, 133 N.W.2d 820 (1965)] ; *Pinkerton v. United States,* 328 U.S. 640 (1946) ; sec. 939.05, Stats.

*By the Court.*—Judgment and order affirmed.

[10] We note as did the Michigan court that the jury requested additional instructions on the theory of accomplice liability, thus indicating their awareness of the separate theories of liability and the likelihood that they proceeded accordingly.

† Petition to review granted February 19, 1979.