Eugene Michael MANSON, Plaintiff in error-Petitioner,

v.

STATE of Wisconsin, Defendant in error.

Supreme Court

*No. 79–131–CR. Submitted on briefs March 4, 1981.—Decided April 29, 1981.*

(Also reported in 304 N.W.2d 729.)

414

For the petitioner the cause was submitted on the briefs of *Mark Lukoff,* first assistant state public defender, *Ann B. Petersen* and *William J. Tyroler,* assistant state Public Defenders.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Chris Heikenen,* assistant attorney general.

SHIRLEY S. ABRAHAMSON, J.   On this review the defendant, Eugene Michael Manson, asserts that the trial court violated his constitutional right to a unanimous jury verdict by instructing the jury that it could find him guilty of armed robbery if it found he either used force or threatened use of imminent force against the victims. He further asserts that a defective information violated his constitutional rights to notice and to defend. We affirm the decision of the court of appeals affirming the judgment and order of the circuit court for Milwaukee county, Robert W. Landry, Circuit Judge, reported as *Manson v. State,* 92 Wis.2d 40, 284 N.W.2d 703 (Ct. App. 1979).

I.

The defendant's conviction of armed robbery in violation of sec. 943.32(1), Stats. 1979–80, and his convictions of other charges not before the court on this review, arose from the December 16, 1977 armed robbery of the Rexnord Credit Union located in the Village of West Milwaukee in Milwaukee county. The sufficiency of the evidence to support the conviction is not challenged. The facts brought forth at trial are essential, however, to understanding the issues.

On December 16, 1977, at about 9:40 a.m., a man carrying a black plastic bag and a handgun entered the credit union and approached the first teller's station. Gregory Price, the assistant manager of the credit union, was standing near the station. The robber pointed the gun at Price's midsection and demanded money. Price reached for the cash drawer at the first station; the robber ran around the counter, said, "I mean business," lowered the gun and shot Price in the leg.

Terri Sponholtz Lodwig, one of the tellers, testified she heard the robber state "I mean business" and that she heard the shot. She then got up, walked to her cash

drawer and withdrew the "bait money" setting off an alarm in the West Milwaukee Police Station. By this time the robber had moved down the counter to where Lodwig stood. She testified that he said to her "Hurry up, put it in the bag." She then placed the money from her cash drawer into the bag. Lodwig testified that the robber then said he wanted the money from the rest of the drawers. Assisted by another teller, she then withdrew the cash from drawers at other stations and placed it in the black bag. Lodwig testified that she helped empty the other cash drawers because "when he came in and demanded money, and I heard the gun go off, he kept saying he wanted the money and hurry up, and my first thought was nobody is getting him the money. Someone has to get him the money or we're in trouble. I got up and went to my counter." Lodwig also testified that the gun was pointed at her off and on during the incident.

Three witnesses identified the defendant as the man who robbed the credit union. The defendant admitted having been in the vicinity of the credit union on the day of the robbery but denied having been in the credit union on that day.

A four count information charged the defendant with (1) armed robbery of the credit union, (2) endangering safety by conduct regardless of life (arising from the defendant's shooting Price), (3) attempted first-degree murder (arising from the exchange of gunfire between the defendant and the police after he left the credit union), and (4) false imprisonment (arising from incidents occurring after the defendant left the credit union). The jury found the defendant guilty as charged on all counts except the third, on which the jury returned a verdict of guilty of the lesser included offense of endangering safety by conduct regardless of life.

On this review the defendant challenges only the conviction for armed robbery. The defendant's claim of

error is grounded in the trial court's jury instructions on armed robbery and in Count 1 of the information relating to armed robbery. The defendant argues that the instruction which permitted conviction if the jury found that the defendant either used force with the intent to overcome resistance or threatened the imminent use of force with intent to compel acquiescence deprived him of his constitutional right to a unanimous jury verdict under Art. I, secs. 5 and 7 of the Wisconsin Constitution[1] and that Count 1 of the information denied him his constitutional right to notice and the right to defend under the Fourteenth Amendment to the United States Constitution and Art. I, sec. 7, of the Wisconsin Constitution.[2]

---

[1] Secs. 5 and 7, Art. I, Wis. Const., provide:

"SECTION 5. The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof."

"SECTION 7. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law."

The Wisconsin constitutional guarantee to a defendant of the right to trial by jury includes the right to a unanimous verdict. *Holland v. State,* 91 Wis.2d 134, 138, 280 N.W.2d 288 (1979).

[2] The state argues that the defendant's failure to raise these issues at trial results in a waiver of any claim of error. The court of appeals, despite the state's argument on waiver, decided the merits of the issues raised by the defendant. *Manson v. State, supra,* 92 Wis.2d at 43. Although objections which have been

## II.

The court's instruction to the jury on armed robbery included the following statement:

"Third, that the defendant *used force against the person in possession with intent thereby to overcome his physical resistance or physical power of resistance to the taking or threatened the imminent use of force against such person to compel such person to acquiesce in the taking of the property.*"

The trial court concluded its instruction on armed robbery, saying:

"If you are satisfied beyond a reasonable doubt from the evidence in this case that Terri Sponholtz Ladwig [sic] and Gregory Price had possession of property, money of the credit union, and that the defendant intentionally took and carried away money from the credit union from the presence of Terri Sponholtz Ladwig [sic] and Gregory Price, that at the time of such taking of the money, that the defendant had the intent to steal the money from these persons and *that the defendant either used force* against the persons in possession of the property *with intent thereby to overcome his physical resistance or his physical power of resistance to such taking of the property, or that the defendant threatened the imminent use of force* against the person in possession or any other person who was present, *with intent to compel the person in possession to acquiesce in the taking of the property,* and that the defendant did this while armed with a dangerous weapon, then you should find the defendant guilty of armed robbery as charged." (Emphasis added.)

waived are not reviewable as a matter of right, this court may consider the objections on the merits. *State v. Wedgeworth,* 100 Wis.2d 514, 528, 302 N.W.2d 810 (1981). This court granted defendant's petition to review to decide the merits of his contentions which involve fundamental constitutional rights. We conclude that this record raises the issue of defendant's right to a unanimous verdict and we conclude this issue warrants the court's consideration.

We begin our consideration of the defendant's contention that the instruction deprived him of a unanimous jury verdict by looking at sec. 943.32, Stats. 1977, to determine whether the statute defines two offenses, (1) robbery by use of force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of property (hereafter described in abbreviated form as use of force), and (2) robbery by threat of imminent use of force with intent to compel acquiescence against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property (hereafter described in abbreviated form as threat of imminent use of force), or one offense, robbery, with alternative means of committing the offense. We recognize that the resolution of the question whether sec. 943.32(1) defines one or two crimes does not necessarily complete the inquiry into the question of whether the defendant's right to a unanimous verdict has been honored. *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977) ; *Jackson v. State,* 92 Wis.2d 1, 284 N.W.2d 685 (Ct. App. 1979). However if we determine that sec. 943.32(1) defines two crimes then it is clear that jury unanimity as to each crime is required to convict the defendant of each crime. If we determine that the statute creates a single crime, we must then determine whether the jury may be instructed in the disjunctive without being instructed that jury unanimity is required as to each alternative.

Sec. 943.32, Stats. 1977, provides:

"(1) Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class C felony:

"(a) By using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property; or

"(b) By threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property.

"(2) Whoever violates sub. (1) while armed with a dangerous weapon is guilty of a Class B felony.

"(3) In this section 'owner' means a person in possession of property whether his possession is lawful or unlawful."

Defendant asserts that sec. 943.32 (1) (a) and sec. 943.-32 (1) (b) define two separate, distinct crimes. Defendant bases his contention on prior cases of this court, and in particular *State v. Williamson,* 84 Wis.2d 370, 396, 267 N.W.2d 337 (1978), in which this court made the following statement:

"Armed robbery can be committed either by stealing with force or by stealing with the threat of force. Sec. 943.32 (1) (a), (b), and (2), Stats. Sec. 943.32 (1) (a) and sec. 943.32 (1) (b) are two distinct crimes. *Schleiss v. State,* 71 Wis.2d 733, 239 N.W.2d 68 (1976). The model jury instructions for armed robbery discuss the crime committed in both ways. Thus as the State concedes, the model instruction for armed robbery is, technically, duplicitous. However, it is impossible for such duplicitousness to be error where, as here, the crime charged is sec. 943.32 (1) (b), Stats., armed robbery by threat of force. Any juror who conceivably convicted the defendant of armed robbery by force would have also convicted the defendant of armed robbery by threat to use force. Only in a case where an accused is charged and tried under subsection (a), armed robbery by force, can the instruction permitting the jury to convict if it merely finds the threat of force be duplicitous in any material way. Because the defendant was charged with armed robbery by threat of force, the armed robbery instruction could not have permitted some jurors to convict him of a crime not charged."

*Williamson* relies on *Schleiss v. State,* 71 Wis.2d 733, 738–739, 239 N.W.2d 68 (1976), in which the court explained *Champlain v. State,* 53 Wis.2d 751, 753–754, 193

N.W.2d 868 (1972), in an attempt to distinguish the information challenged in *Schleiss* from the complaint found fatally defective in *Champlain.* In *Schleiss* we explained the *Champlain* case as follows:

"The defendant relies, in part, on *Champlain v. State* (1972), 53 Wis.2d 751, 193 N.W.2d 868, wherein it was determined the trial court was without jurisdiction because of a fatally defective complaint. In *Champlain* the defendant was charged with armed robbery contrary to sec. 943.32 (2), Stats. Sec. 943.32 (2) increases the maximum penalty for robbery, as defined by sec. 943.32 (1) from 10 years to 30 years when the act is committed while the defendant is armed with a dangerous weapon. The problem was presented in *Champlain* because sec. 943.32 (1) defines two separate and distinct crimes of robbery, one in subsection (a) and a second in subsection (b). The information did not allege which of the two possible crimes of robbery the defendant was alleged to have committed while armed with a dangerous weapon. Such is not the situation in the instant case."

This *dicta* in *Schleiss* does not accurately explain the holding of *Champlain.* *Champlain* did not raise or decide the issue of whether sec. 943.32 (1) (a) and sec. 943.32 (1) (b) constitute one or two offenses. In *Champlain* the complaint charged armed robbery contrary to sec. 943.32 (2). The complaint failed to describe the crime either in terms of sec. 943.32 (1) (a) or in terms of sec. 943.32 (1) (b) or in terms of both subsections. The complaint referred to sec. 943.32 (2). The court held the complaint fatally defective because there was no description of the crime charged, concluding that the mere fact that sec. 943.32 (2), Stats. 1977, referred to sec. 943.32 (1) was inadequate to cure the defect of the complaint. The holding in *Champlain* is still good law. *Wilson v. State,* 59 Wis.2d 269, 275, 208 N.W.2d 134 (1973); *Clark v. State,* 62 Wis.2d 194, 203, 214 N.W.2d 450 (1974). However, in *Schleiss* the court misread the

*Champlain* decision and repeated its error in *Williamson* where it failed to scrutinize *Schleiss* carefully and where it relied on a concession by the state. The court of appeals was correct in concluding that this court's statements in *Williamson* and *Schleiss* that the legislature set forth two crimes in sec. 943.32(1)(a) and (1)(b) were erroneous and that the court of appeals would not be justified in relying on these statements. 92 Wis.2d at 45.

We decline to follow our previous comments in *State v. Williamson, supra,* and *Schleiss v. State, supra,* that sec. 943.32(1)(a) and sec. 943.32(1)(b) are distinct crimes, without further examination. The determination of whether or not sec. 943.32(1) defines a single crime or two separate crimes is dependent on legislative intent. *Cf., State v. Eisch,* 96 Wis.2d 25, 30, 291 N.W.2d 800 (1980); *State v. Rabe,* 96 Wis.2d 48, 70, 291 N.W. 2d 809 (1980).

We deem the factors relevant to this determination of legislative intent to be (1) the language of the statute; (2) the legislative history and context of the statute; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment for the conduct. *United States v. UCO Oil Co.,* 546 F.2d 833 (9th Cir. 1976). The framework of sec. 943.32(1) setting forth use of force and the threat of imminent use of force in two separate and distinct paragraphs lends plausibility to the interpretation that the legislature intended to define two crimes. But an analysis of the language of the statute and the legislative history point to the opposite conclusion.

The introductory clause of sec. 943.32(1) indicates that the section is directed at a single result—the taking of property from the person or presence of the owner with intent to steal and with a harm to the owner. This

clause, standing alone, broadly defines one offense and subsections (a) and (b) define in greater detail the two means by which the offense must be accomplished to constitute a Class C felony. Thus it would be reasonable to conclude that the legislature was concerned with proscribing a single wrong—the taking from the person with a harm to the victim—rather than with making the two means of accomplishing the evil separate and distinct offenses. The language of the first clause of sec. 943.32(1) therefore supports the conclusion that the legislature was describing one offense, while the division of 943.32(1) into two distinct subsections supports the conclusion that the legislature was describing two offenses.

The legislative history of the statutory definition of robbery corroborates the conclusion that the legislature intended to define one offense and that the enumeration of the two kinds of conduct reflects different means of accomplishing the crime, not separate and distinct offenses. Since 1848 robbery has been defined in the statutes in a single paragraph providing a single penalty for the taking of property by force and violence or by assault and putting in fear. Sec. 36, ch. 133, 1849 Rev. Stats., defined robbery as follows:

"Sec. 36.   If any person shall by force and violence, or by assault and putting in fear, feloniously rob, steal and take from the person of another, any money or other property which may be the subject to larceny, such robber not being armed with a dangerous weapon, he shall be punished by imprisonment in the state prison, not more than three years nor less than one year."

This 1849 formulation is essentially a restatement of the common law; "[r]obbery, one of the common-law felonies, is the felonious taking and carrying away of the personal property of another from his person or in his presence, by violence, or by putting him in fear."

Clark & Marshall, *Law of Crimes*, sec. 12.09 (7th ed. 1967). *See also* LaFave & Scott, *Criminal Law* 698 (1972) ; Anderson, 2 *Wharton's Criminal Law and Procedure* sec. 554 (1957) ; Kenny, *Outlines of Criminal Law,* 210 (American Ed. 1907). In *Gillotti v. State,* 135 Wis. 634, 636–637, 116 N.W. 252 (1908), in interpreting a statute substantially similar to the 1849 law, the court stated ". . . the statute calls for either the characteristic of 'force and violence' or 'assault and putting in fear to constitute the offense'. . . ."

The common law requirements of proof for these alternative means are in certain respects analogous to the requirements of proof of the common law offenses of battery and assault. "The common law crime of robbery (the unlawful taking of another's property by violence amounting to a battery or by threat amounting to an assault) might be considered an aggravated type of assault and battery." LaFave & Scott, *Criminal Law* sec. 80, p. 603 (1972).

This basic formulation of robbery, that is defining the crime of robbery in one paragraph and stating force and threat of force disjunctively within that paragraph, continued from 1848 to 1955. Ch. 623, Laws of 1953, effective July 1, 1955, altered this formulation and changed the statutory language. The offense of robbery was defined as follows :

"343.27 **Robbery** (1) Whoever, with intent to appropriate property of another to his own use, takes such property from the person or presence of the owner by either of the following means may be imprisoned not more than 10 years :

"(a) By using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking of or escaping with the property ; or

"(b) By threatening the imminent use of force against the person of the owner or another who is present with intent thereby to compel the owner to acquiesce in the taking of or escaping with the property.

"(2) In this section 'owner' means the person in lawful possession of the property."

A comparison readily shows that the present 943.32 (1) (a) and (b) is substantially similar to the 1953 formulation.

The 1953 formulation, while stating the alternatives of force and threat of imminent use of force with greater precision than earlier laws, was not intended to divide the crime of robbery into two separate offenses, one involving the use of force and the other involving threatening the imminent use of force.[3] The 1953 revision of sec. 343.27 was essentially a restatement of the common law in which robbery was a single crime which might be committed by use of force or fear.[4] Many jurisdictions view robbery as a single crime committed either by force or fear.[5]

[3] *See* Comment to sec. 343.27, Stats. 1955, Judiciary Committee Report on the Criminal Code, Wisconsin Legislative Council 1953, and the Minutes and Committee Documents of the Wisconsin Legislative Council Criminal Code Advisory Committee (1954–1955).

[4] *See* "Sections in the Criminal Code Which Incorporates Case Law Into the Statutes" (issued by Wisconsin Legislative Council Criminal Code Advisory Committee) describing sec. 343.27 as "stat[ing] in statutory form the elements of the crime substantially as they are at common law." *See also*, Note, *Robbery-Putting in Fear*, 24 Minn. L. Rev. 708 (1940); and Note, *Larceny—Degree of Force Necessary to Constitute Robbery*, 23 J. Crim. L and Crim. 113 (1932).

[5] *State v. Sawyer*, 224 N.C. 61, 29 S.E.2d 34, 37 (1944); *Waggner v. Commonwealth*, 298 Ky. 153, 182 S.W.2d 661 (1944); *State v. Medlay*, 353 Mo. 925, 185 S.W.2d 633, 634 (1945); *Sloan v. State*, 491 S.W.2d 858, 861 (Tenn. Crim. App. 1972) *cert. denied* Tenn. S. Ct. (1973); *Snowball v. State*, 477 S.W.2d 240, 245 (Tenn. Crim. App. 1971) *cert. denied* Tenn. S. Ct.; *Commonwealth v. Jones*, 362 Mass. 83, 283 N.E.2d 840, 842–843 (1972); *Commonwealth v. Richards*, 363 Mass. 299, 293 N.E.2d 854, 857, 858 (1973); *State v. Stephens*, 66 Ariz. 219, 186 P.2d 346, 350–351 (1947); *Whitehead v. State*, 526 P.2d 959, 962 (Okla. Crim. 1974); *State v. Walsh*, 81 N.M. 65, 463 P.2d 41, 42–43 (Ct. App. 1969); *State v. Barnett*, 111 Ariz. 391,

The context of sec. 943.32 in the statutes is also of aid in discerning the legislative intent. Sec. 943.32, Stats. 1979–80, is now located in ch. 943 entitled "Crimes Against Property," and is grouped with crimes such as theft, transfer of encumbered property, forgery and shoplifting under the subtitle "Misappropriation." Robbery is not in chapter 940 entitled "Crimes Against Life and Bodily Security." Robbery is thus now viewed by the legislature as an aggravated form of stealing. Baldwin, *Criminal Misappropriations in Wisconsin—Part II,* 44 Marq. L. Rev. 430, 450–451 (1961). The context of sec. 943.32, as well as the legislative history, therefore support the view that the legislature intended to create one offense against property which might be committed by either of two means of overcoming the resistance of the owner.

We look next to the nature of the proscribed conduct to determine whether the statutory alternatives are similar or significantly different. If the alternatives are similar, one crime was probably intended. As we said in *State v. Baldwin,* 101, Wis.2d 441, 450, 304 N.W. 2d 742 (1981), "We are not prepared to debate the extent to which use of force and threat of force represent different concepts. There can be little doubt that, as the defendant states, the threat of a beating is distinguishable from the beating itself. . . . Moreover, it is not difficult to imagine situations where the line be-

531 P.2d 148 (en banc 1975); *People v. Thomas,* 181 Colo. 317, 509 P.2d 592 (1973); *Commonwealth v. Simpson,* 436 Pa. 459, 260 A.2d 751, 754 (1970); *State v. Hatch,* 305 So.2d 497, 500 (La. 1973); *State v. Harris,* 14 N.C. App. 478, 188 S.E.2d 632, 634 (1972); *Vasco v. State,* 163 Ind. App. 461, 324 N.E.2d 826, 827, 828 (1975); *Gray v. State,* 10 Md. App. 478, 271 A.2d 390, 392 (1970); *State v. Adkins,* 200 Neb. 775, 265 N.W.2d 454, 455 (1978); *People v. Hale,* 80 Ill. App.3d 63, 35 Ill. Dec. 509, 399 N.E.2d 343, 345 (1980); *Wash. v. State,* 408 N.E.2d 634, 636 (Ind. App. 1980).

tween 'threat' and 'use' blurs, even where a jury may be in agreement as to precisely what a defendant did." Thus the same conduct can, but does not necessarily, constitute both use of force and the threat of imminent use of force in the crime of robbery. The robber's conduct in this case may be seen as both the use of force and the threat of imminent use of force. It can be seen as force with respect to Price, the threat of imminent use of continuing further force as to Price, and the threat of imminent use of force as to the others in the credit union.

While we agree with the defendant that different conduct may constitute the use of force and the threat of imminent use of force and that use of force and the threat of imminent use of force can have a disparate impact on the owner, we conclude that neither the nature of the conduct as force or threat (as long as one or the other is present) nor the disparate impact of force or threat on the owner is material to the question of whether or not a robbery has been committed. The concept embodied in the terms use of force and the threat of imminent use of force is coercion or compulsion by an actual or threatened act against the person of the owner to overcome his or her resistance or to gain his or her acquiescence. Because use of force and the threat of imminent use of force are means to the same end and are accomplished by a similar mechanism—behavior which evidences force— we conclude that these proscribed acts are similar.

The final factor we look at to determine legislative intent as to whether one crime or multiple crimes are proscribed is the appropriateness of multiple punishment. Whether multiple punishment is appropriate depends on several factors, including whether use of force and threat of imminent use of force are so significantly different that the conduct satisfying each of these criteria may be characterized as separate crimes although each would furnish a factual premise for the violation of the

same statute; whether the acts are so close in time that they are to be treated as one; whether each act invades a different interest of the victim which the statutes intend to protect. In the case of robbery these factors point to the conclusion that multiple punishment would not be appropriate when use of force and threat of force occur in a single taking.

Although the statute does not expressly state whether the legislature intended to define robbery with use of force or with the threat of imminent use of force as one or two offenses, we conclude that a common sense reading of the statute which is reasonable and fair to offenders and society is that one offense is intended. *Bell v. United States,* 349 U.S. 81, 83 (1955); *Irby v. United States,* 390 F.2d 432, 436 (D.C. Cir. 1967) (J. Leventhal concurring). *Cf. State v. Eisch,* 96 Wis.2d 25, 291 N.W.2d 800 (1980); *State v. Rabe,* 96 Wis.2d 48, 291 N.W.2d 809 (1980); *Harrell v. State,* 88 Wis.2d 546, 277 N.W. 2d 462 (Ct. App. 1979).

### III.

Our conclusion that sec. 943.32(1) sets forth one offense does not resolve the question of whether or not instructing the jury that the defendant may be found guilty of the offense of armed robbery if he either used or threatened the imminent use of force violates the defendant's constitutional right to a unanimous verdict. *Compare State v. Arndt,* 87 Wash.2d 374, 553 P.2d 1328 (en banc 1976) and *State v. Green,* 94 Wash.2d 216, 616 P.2d 628 (en banc 1980). The defendant contends that his constitutional right to a unanimous verdict is infringed if a guilty verdict is returned when all of the members of the jury agree that the defendant either used force or threatened the imminent use of force but do

not unanimously agree whether the defendant's conduct should be characterized as the use of force or as the threat of imminent use of force. For this reason the defendant contends that the jury must be instructed that all jurors must agree as to which alternative means was used by the defendant in order to convict the defendant of the offense of armed robbery.

The constitutional right to a unanimous jury verdict exists under both the United States and Wisconsin Constitutions. *See State v. Baldwin,* 101 Wis.2d 441, 446 n. 3, 304 N.W.2d 742 (1981). The nature and scope of that right, however, are not well defined and have been receiving increased attention by the courts and commentators in recent years. The leading case discussing the question of jury unanimity is *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977).[6]

The defendant in this case, as the defendant in *Baldwin,* argues that use of force and the threat of imminent use of force are conceptually distinguishable and that pursuant to *Gipson* the jury must agree upon which of the two was present in the crime. The court concludes, as it did in *Baldwin,* that the use of force and

[6] This court has adopted the *Gipson* analysis for purposes of determining whether the defendant's right to a unanimous verdict was violated. *Holland v. State,* 91 Wis.2d 134, 280 N.W.2d 288 (1979); *Wray v. State,* 87 Wis.2d 367, 275 N.W.2d 731 (Ct. App. 1978) (aff'd unpub. op. of S. Ct. filed June 29, 1979). *See also Jackson v. State,* 92 Wis.2d 1, 284 N.W.2d 685 (Ct. App. 1979).

For discussions of the *Gipson* case *see* Baumgarth, *Application of Gipson's Unanimous Verdict Rationale To The Wisconsin Party to a Crime Statute,* 1980 Wis. L. Rev. 597; Wellman, *Const'l Law —Criminal Procedure—Jury Instructions and The Unanimous Jury Verdict,* 1978 Wis. L. Rev. 339; Note, *Right to Jury Unanimity on Material Fact Issues: United States v. Gipson,* 91 Harv. L. Rev. 499 (1977); Note, *United States v. Gipson: Duplicity Denies Right to Unanimous Verdict,* 1978 Det. College of Law Rev. 319. For a discussion of jury unanimity generally, *see* Ginsburg, *Special Findings and Jury Unanimity in the Federal Courts,* 65 Colum. L. R. 256 (1965).

the threat of imminent use of force "are of sufficient conceptual similarity to comprise but a single element of the offense." Use of force and threat of imminent use of force comprise one conceptual grouping under the "conceptual grouping" doctrine set forth in *Gipson. State v. Baldwin*, 101 Wis.2d 441, 450, 304 N.W.2d 742 (1981). The essence of the offense of robbery is compelling the owner to part with his property under compulsion resulting from defendant's conduct directed against the person of the owner or against another who is in the owner's presence.

The court concludes that requiring the jurors to decide whether the taking was accomplished by "using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property," sec. 943.32(1)(a), Stats. 1979–80, or "by threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property," sec. 943.32 (1)(a), would raise characterization problems which the courts in *Gipson* and in *Holland* correctly noted should be avoided. The jury should not be instructed to draw a line finer than that which the human conduct sought to be defined will realistically permit. The jury should not be obliged to decide between two statutorily prohibited ways of committing the crime if the two ways are practically indistinguishable. An instruction requiring unanimity of the mode of committing the single crime of robbery was not required.

## IV.

The defendant argues that the information was defective. He argues that he was given notice that he was

charged with armed robbery by use of force but that he was not given notice that he was charged with armed robbery by threat of imminent use of force.[7] Procedural due process requires that a defendant have notice of a specific charge and an opportunity to be heard at trial on the issues raised by the charge. *Geitner v. State,* 59 Wis.2d 128, 133–134, 207 N.W.2d 837 (1973). "The purpose of the information is to inform the defendant of the charges against him. Notice is the key factor." *Whitaker v. State,* 83 Wis.2d 368, 373, 265 N.W.2d 575 (1978).

In this case, Count 1 of the information alleged both use of force and threat of imminent use of force, but made reference only to sec. 943.32(1)(a), Stats. 1977, which is the use of force provision. Count 1 states:

*"COUNT #1: Armed Robbery*
"On December 16, 1977, at 5100 West Mitchell Street, Village of West Milwaukee, with intent to steal, [the defendant] did feloniously take property, U. S. currency, from the presence of Gregory Price and Terri Sponholtz, the owners, *by using force against the person of the owner,* Gregory Price, and *threatening imminent force against the owner,* Terri Sponholtz, and while armed with a dangerous weapon, to wit: a handgun, with intent thereby to overcome the said owner's resistance or physical power of resistance to the taking or carrying

---

[7] We have concluded that robbery is a single offense which may be committed by alternative methods. When a statute makes it a crime to do any one of several acts disjunctively, all of which are punishable alike, it has generally been viewed that the acts may be charged conjunctively in a single count as a single offense. Thus a single count may allege use of force and the threat of imminent use of force without being duplicitous. *Boldt v. State,* 72 Wis. 7, 38 N.W. 177 (1888); *Jenness v. State,* 103 Wis. 553, 79 N.W. 759 (1899); *State v. Baldwin,* 101 Wis.2d 441, 447, 304 N.W.2d 742 (1981); Wright, *Federal Practice and Procedure* sec. 142 (1969). The concepts of duplicity and unanimity are related, but they are not the same. For a discussion of duplicity and multiplicity, *see State v. George,* 69 Wis.2d 92, 230 N.W.2d 253 (1975).

away of said property, contrary to Wisconsin statutes section *943.32(1)(a) and (2).*" (Emphasis added.)

While the defendant correctly points out that Count 1 does not track the language of sec. 943.32(1)(b) and does not make specific reference to sec. 943.32(1)(b), he offers no other support for the claim that he was denied notice that he was being charged with armed robbery with the threat of imminent use of force. An information is not required to charge a crime in the language of the statute. *Huebner v. State,* 33 Wis.2d 505, 514, 147 N.W.2d 646 (1967). Contrary to the defendant's contention, the language of Count 1 fully advised the defendant of the nature and cause of the accusation against him. Moreover, the defendant does not claim that he was impeded in the preparation of his defense by the lack of reference in the information to sec. 943.32(1)(b) or the failure of the information to track the statutory language.

After considering carefully the language of Count 1 of the information, we reject defendant's contention of lack of notice and of denial of the right to defend. While sec. 943.32(1)(b) was not cited in the information, the language used gave notice that a single offense of armed robbery was charged based on the use of force and the threat of imminent use of force.

For the reasons set forth, we affirm the decision of the court of appeals.

*By the Court.*—Decision affirmed.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* I write separately to express my growing concern about the difficulty of applying the teaching of *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977), on the issue of jury unanimity. Other jurisdictions are also having difficulty in explaining the application of *Gipson* to the

particular case. All agree that jury unanimity is required, but substantial doubt exists as to what the jury has to be unanimous about.[1]

I start by setting forth the rationale of *Gipson* as I understand it.

[1] In *Boldt v. State*, 72 Wis. 7, 14–17, 38 N.W. 177 (1888), multiple offenses were involved rather than a single offense which may be committed in several ways. The offense charged sale of liquor. The complaint charged only a single violation of the statute, that is, sale on a particular date. Proof was admitted on several distinct sales and the jury was instructed as to the several violations. This court discussed jury unanimity as follows:

"We have stated that the defendant was charged with a single violation of the statute in the complaint. Now, if evidence is admitted to prove several distinct offenses, it is apparent it would often work hardship and injustice to the defendant; for, while charged with the commission of but one offense, he might be tried, under such a rule, for a great number of distinct and independent offenses of which he had no notice in the complaint, and had made no preparation to meet. But the still more serious objection is that the jury might find him guilty under proof of several distinct offenses, when they would not agree that the evidence was sufficient to find him guilty of any one particular sale. Or, as it is well put by the court in *State v. Crimmins*, 31 Kan. 376–380, 'If evidence was introduced tending to prove twelve or more different offenses, the jury might find him guilty without any two of the jurors agreeing that he was guilty of any particular one of such offenses. One juror might believe that he was guilty of one offense, another juror of another, and so on with respect to all the jurors and all the offenses; each juror believing that the defendant was guilty of some one of the offenses which the evidence possibly tended to prove, but no two jurors agreeing that he was guilty of the same identical offense.' This, it seems to us, is a most weighty and insuperable objection to allowing evidence tending to prove several separate and distinct offenses under a complaint or information which charges the defendant with the commission of but a single one.

". . .

". . . But in the case at bar the prosecution was allowed to prove any number of sales of liquor to different persons, within the period named, under a complaint which charged but a single sale. The court refused to compel the prosecution to elect on what sale

Gipson was charged with one count of selling or receiving a stolen vehicle moving in interstate commerce in violation of 18 USC sec. 2313. The statute provides that whoever receives, conceals, stores, barters, sells or disposes of a motor vehicle knowing the same to be stolen shall be fined or imprisoned or both. On appeal Gipson's argument of violation of his right to a unanimous verdict was based on a jury instruction specifically sanctioning the return of a verdict of guilty based on the jury's agreement that the defendant did one of the prohibited acts without requiring that all members of the jury agree as to which of the prohibited acts was committed.[2] The *Gipson* court phrased the issue raised in the case as follows:

it would ask for a conviction or to confine its evidence to the sales made on or about June 10th. Under the circumstances it would seem but right and fair to have required the state to make an election; certainly before the defendant was called upon to make his defense. But without deciding the point it may perhaps be held that this was a matter resting in the discretion of the court. But we are clearly of the opinion that the court should have directed the jury that they must find the defendant guilty of making some one specific sale in order to convict. But the court charged in effect that if the jury was satisfied that the defendant made any sale to any one between the 10th day of May and the 11th day of June, they were authorized to convict him. For the reasons given, we think this was error, which must work a reversal of the judgment. The jury were not instructed, as they should have been, that they must be satisfied from the proof that the defendant made a sale upon some day prior to the day specified, and that they must all agree that he was guilty of the same identical offense. We think the court was bound to give such an instruction, in view of the evidence admitted and of the third instruction asked on the part of the defendant, which was refused."

[2] ". . . About an hour after the jury retired to deliberate, the jurors returned to the courtroom to request additional instructions from the court, handing the judge a note that read, 'In Count Two, will he be guilty of all counts or will it be broken down?' The judge accurately perceived that this question could be interpreted in several different ways. He identified three distinct glosses

". . . Where a single criminal statute prohibits a number of acts, and a finding by the jury that the defendant did any one of the prohibited acts is sufficient to convict him (provided, of course, that all other elements of the offense are found), is the defendant's right to a unanimous verdict infringed if a guilty verdict is returned when all members of the jury agree that the defendant performed one of the prohibited acts, but disagree as to which of the acts he performed? In other words, where a criminal statute provides a number of ways of satisfying the actus reus element of an offense, does a defendant's right to a unanimous jury verdict require all jurors to find that element present by reaching substantial agreement as to the facts that satisfy the element before they can return a verdict of guilty?" *Gipson, supra,* 553 F.2d at 456–457.

The court of appeals overturned the conviction, holding that Gipson's right to a unanimous jury verdict was infringed. The court of appeals said that

"A superficial analysis of the problem might yield the conclusion that since every juror was still required to find all elements of the charged offense present in order

that could be placed on the question and gave the jury instructions responsive to each of these interpretations. In response to his third interpretation of the jury's question, the judge charged the jury as follows:

" 'A third question that may be the one that the jury is really asking is, must there be an agreement by all twelve jurors as to which act of those several charged in Count Two, that the defendant did. For example, would it be possible for one juror to believe that the Defendant had stored property, and another juror to believe that he had received property, and so on. If all twelve agreed that he had done some one of those acts, but there was not agreement that he had done the same act, would that support a conviction? The answer is yes. If each of you is satisfied beyond any reasonable doubt that he did any one of those acts charged, and did it with the requisite state of mind, then there would be a unanimous verdict, and there could be a return of guilty under Count Two of the indictment, even though there may have been disagreement within the jury as to whether it was receiving or storing or what.' " *Gipson, supra,* 553 F.2d at 455, 456.

to convict the defendant, there was necessarily unanimous jury agreement as to his guilt. This reasoning loses its cogency, however, when the policy underlying the unanimous jury right is taken into account." *Gipson, supra,* 553 F.2d at 457.

The court of appeals reasoned that the unanimity right, like the reasonable doubt standard, " 'impress[ed] on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue.' " The court of appeals interpreted the unanimity rule as requiring "jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." The court of appeals, relying on *In re Winship,* 397 U.S. 358 (1970), concluded that "jury consensus as to the defendant's course of action" is necessary to ensure the defendant's right to a unanimous verdict. *Gipson, supra,* 553 F.2d at 457, 458.[3]

Proceeding from this foundation the court of appeals considered the statute under which Gipson was convicted. The court began by noting that although a statute prohibits several acts, each act is not necessarily distinct and different from the others. Apparently interpreting the statutorily prohibited acts as they are commonly understood, or as they are defined by case law or statute, the court concluded that some of the statutorily prohibited acts were synonymous and others were not. The court determined that the statutorily prohib-

---

[3] The court said the challenged instruction authorized the jury to return a guilty verdict "despite the fact that some jurors may have believed that Gipson engaged in conduct only characterizable as receiving, concealing, or storing while other jurors were convinced that he committed acts only constituting bartering, selling, or disposing. Thus, under the instruction, the jury was permitted to convict Gipson even though there may have been significant disagreement as to what he did. The instruction was therefore violative of Gipson's right to a unanimous jury verdict." *Gipson, supra,* 553 F2d at 458, 459.

ited acts fell into two distinct conceptual groupings: one, relating to housing of stolen vehicles, consisted of receiving, concealing and storing; the other relating to marketing of stolen vehicles consisted of bartering, selling and disposing.

As to the three statutorily prohibited acts within each conceptual grouping, the *Gipson* court decided that the jury might disagree which statutorily prohibited act within the conceptual grouping best describes Gipson's conduct without violating the unanimous verdict requirement. The basis for this conclusion appears to rest on the following reasoning: The statutorily prohibited acts within each grouping are substantially similar; Gipson's conduct might constitute more than one of the similar statutorily prohibited acts within a single conceptual grouping; requiring the jury to agree as to which statutorily prohibited act within one conceptual grouping best describes Gipson's conduct presents, what the court termed, a characterization problem; a disagreement among jurors as to which act Gipson committed will not hinder a unanimous jury finding of the actus reus element of the offense.

As to the two statutory groupings, the *Gipson* court decided the jurors must be told they must agree on which of the statutorily prohibited groupings Gipson's conduct violates, because only if the jurors agree on the statutorily prohibited grouping will they have reached substantial agreement on what Gipson did. The court said the two conceptual groupings in *Gipson,* each consisting of three statutorily prohibited acts, were sufficiently different so that a verdict would not be unanimous if some jurors thought Gipson committed a statutorily prohibited act in the first conceptual grouping while other jurors thought he committed a statutorily prohibited act in the second conceptual grouping. The court stated:

"On the other hand, the two conceptual groupings are sufficiently different so that a jury finding of the

actus reus element of the offense would not be 'unanimous' if some of the jurors thought the defendant committed only an act in the first conceptual grouping while others believed he committed an act only in the second. Differentiating the course of conduct prohibited by the first grouping from that proscribed by the second presents neither the conceptualization nor the characterization problems posed by distinguishing the acts within each grouping. The individual jurors and the collective jury could be expected to perceive and understand that the conduct prohibited by the first grouping, that relating to the housing of stolen vehicles, is distinct and different from the conduct forbidden by the second grouping, that dealing with the marketing of stolen vehicles." *Gipson, supra,* 553 F.2d at 458.

This analysis makes evident that *Gipson* does not offer a firm, fixed rule for use in determining which statutorily prohibited acts or which statutorily prohibited ways of committing a single offense are sufficiently synonymous or analogous not to require a unanimity instruction and which statutorily prohibited acts or ways of committing a single offense are sufficiently conceptually distinct and different to require a unanimity instruction. Other conceptual groupings of the six acts are possible. Another conceptual grouping might be to put all six acts into one conceptual group, namely trafficking in stolen vehicles. Alternatively, on facts other than those before the court the *Gipson* court itself might have announced different conceptual groupings. It is easy to conceive of facts in which asking a jury to distinguish between concealing and disposing of a stolen vehicle would be a characterization problem not requiring a unanimous jury finding. Conceptual groupings, while dependent to an extent on the statutory language, are also dependent upon the facts in evidence. This makes the *Gipson* analysis difficult to apply.

Because *Gipson* appears to be predicated on the concept that the unanimous jury verdict requires the jurors

to be in substantial agreement as to what the defendant did (that is, as to what conduct the defendant engaged in), as well as to whether that conduct fulfills the legal elements of the crime,[4] I fear that a court might not be able to determine, without reference to the evidence in a particular case, whether the possible conceptual differences between use of force and the threat of imminent use of force require that the jury determine unanimously which of the two statutory alternatives defines the defendant's conduct.

In the instant case an instruction requiring unanimity on the mode of committing the single crime of robbery is not needed. The modes charged are, on the facts of

---

[4] The value of the unanimous jury verdict has been discussed as follows:

". . . Unlike the 'historical accident' of jury size, unanimity relates directly to the deliberative function of the jury. Unanimity serves to effectuate the purpose of the jury system by promoting the full expression of the views of all members of the jury and by insuring that those views are taken into account as fully and fairly as possible in reaching a verdict. *See, e.g., Apodaca v. Oregon*, 406 U.S. 404, 397–99, 92 S. Ct. 1628 (1972) (Stewart, J., dissenting); *id.* at 399–403, 92 S. Ct. 1628 (Marshall, J., dissenting). Unanimity is an indispensable element of a federal jury trial because it serves the purpose of insuring that the views of a cross-section of the community are brought to bear fully on the issues to be decided at trial." *United States v. Scalzitti*, 578 F.2d 507, 512 (3d Cir. 1978).

". . . The dynamics of the jury process are such that often only one or two members express doubt as to view held by a majority at the outset of deliberations. A rule which insists on unanimity furthers the deliberative process by requiring the minority view to be examined and, if possible, accepted or rejected by the entire jury. The requirement of jury unanimity thus has a precise effect on the fact-finding process, one which gives particular significance and conclusiveness to the jury's verdict. Both the defendant and society can place special confidence in a unanimous verdict, and we are unwilling to surrender the values of that mode of fact-finding . . . ." *United States v. Lopez*, 581 F.2d 1338, 1341 (9th Cir. 1978).

the case, analogous and overlapping; adequate evidence concerning each mode was submitted to the jury; and unanimity was not necessary to ensure jury unanimity on what the defendant did. I am concerned that a case might arise where, in order to ensure jury unanimity on what the defendant did, the trial court may have to give an instruction requiring unanimity on the mode of committing the single crime of robbery.

Although I conclude that it was not necessary for the trial court in this case to elect between "use of force" and "threat of imminent use of force" in instructing the jury, I endorse the Comment of the Jury Instruction Committee that "in the usual case election would clarify the issue and should be done where possible." Wis. J I—Criminal Part II, No. 1480, Note 2 (Rel. No. 2 12/80). *Cf. People v. Embree*, 70 Mich. App. 382, 246 N.W.2d 6, 8 (1976). And when the evidence is insufficient to warrant an instruction on one of the alternative ways of committing a crime, the instruction should not refer to that alternative.[5]

It would be easier if I thought, without qualification or hesitation, that in every robbery case the trial court could automatically instruct on both alternatives. I do not think *Gipson's* teachings can be so easily applied.

---

[5] It appears that the goal of fitting the instruction to the evidence has been recommended by the Wisconsin Criminal Jury Instructions Committee since 1966. Wis. J I—Criminal, Part II No. 1475 (1966) is entitled "Robbery by the Use of Force" and instructs that the jury be satisfied beyond a reasonable doubt that the defendant used force; Wis. J I—Criminal, Part II No. 1477 (1966) is entitled "Robbery by Threat of Force" and instructs that the jury be satisfied beyond a reasonable doubt that the defendant threatened the imminent use of force; Wis. J I—Criminal, Part II No. 1479 (1966) is entitled "Robbery (Where Facts Warrant Instruction on Both Use of Force and Threat Thereof)" and instructs that the jury be satisfied beyond a reasonable doubt that the defendant used force or threatened the use of imminent force.