STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Robert Edward EISCH, Defendant-Respondent.

Supreme Court

*No. 78–256–CR.   Argued April 2, 1980.—Decided May 6, 1980.*

(Also reported in 291 N.W.2d 800.)

For the appellant-petitioner the cause was argued by *Kirbie Knutson*, assistant attorney general, with whom on brief was *Bronson C. La Follette*, attorney general.

For the respondent there was a brief and oral argument by *James P. Burnett* of Chilton.

HEFFERNAN, J. The defendant was originally charged with four counts of second degree sexual assault, contrary to sec. 940.225(2)(a), Stats. After a preliminary examination and a bindover to Circuit Court for Calumet County, the defendant moved to dismiss the information on the ground that it was multiplicitous, *i.e.*, that it charged the same offense—sexual intercourse without consent and by use of force—in four different counts. The court ordered the dismissal of three counts and directed the prosecutor to file an amended information charging one count of forcible unconsented intercourse, contrary to sec. 940.225(2)(a).

The state appealed the order to this court. Because the appeal was taken when the court system was in transition, the appeal was transferred to the court of appeals pursuant to sec. 131, ch. 187, Laws of 1977.

The appeal was heard in the court of appeals, and the trial court order of dismissal of three counts was af-

firmed.[1] In the exercise of our appellate discretion, we granted the state's petition for review.

The question posed is whether four acts of sexual intercourse, each different in kind from the others and differently defined in the statutes, constitute four separately chargeable criminal offenses, when all of the acts took place at the same location within a period of time that did not exceed two and one-half hours.

We conclude that the offenses are separate and distinct and may be separately charged. We reverse the court of appeals and direct that the record be remanded to the circuit court for Calumet County for further proceedings on the basis of the four counts charged by the district attorney.

Because we confront the case at the pleading stage, we are confined to the facts alleged in the complaint, information, and transcript of testimony of the witnesses at the preliminary examination. The parties have stipulated to the use of these documents as the record on this appeal.

The facts revealed by the record are these: The complainant was hitchhiking from Appleton to Neenah when she was picked up by the defendant Eisch at about 1 a.m. on May 18, 1978. Eisch drove his automobile into a field; and, according to the complainant's testimony, he forcibly removed her clothing. He accompanied this action with striking her and choking her. She stated that he inserted his penis into her vagina several times. She recounted that Eisch repeatedly stated that, if she would not cooperate, he would beat her. He also inserted his penis into the complainant's anus several times and forced a beer bottle into her vagina. Additionally, the complainant stated that Eisch forced his penis into her mouth. During all of this period, the complainant stated

---

[1] The opinion of the Court of Appeals filed April 6, 1979, was unpublished pursuant to Rule 809.23(2).

the defendant was striking her and pounding her head against the side of the car.[2] She escaped after she took the beer bottle and struck her assailant, cutting him badly. After her escape from the car, she hid in the field for two or three hours to escape recapture by her assailant. She eventually went to a nearby home, and the police were called. It is impossible from the skeletal facts to determine how long the entire assaultive episode took. It is, however, apparent that the ordeal was continuous. The record reveals that Eisch called a friend at about 3:30 a.m. to help get his car out of the field, and at about 5:30 a.m. he sought medical attention. The affidavit supporting the warrant recites that the sheriff's department was sent at 5:30 a.m. to a farmhouse where the victim sought refuge. From the record, it may be surmised that the alleged attack took place between 1 a.m. and 3:30 a.m. on May 18, 1978.

The statute under which Eisch was charged is sec. 940.225(2)(a), Stats.:

"940.225 **Sexual assault.**

"(2) SECOND DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class C felony:

"(a) Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence."

The information recited that Eisch had forcible and unconsented sexual intercourse with the victim in four respects: Count 1, "genital intercourse"; Count 2, "anal intercourse"; Count 3, "fellatio"; Count 4, "by inserting an object, to-wit: a beer bottle into her genitals."

Sec. 940.225(5)(c), Stats., provides:

"(c) 'Sexual intercourse' includes the meaning assigned under s. 939.22(36) as well as cunnilingus, fella-

---

[2] The record shows that the complainant was severely beaten and was hospitalized for six days after the attack. At the time of the preliminary examination on May 31, 1978, the bruises on her face were clearly visible.

tio, anal intercourse or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening of another, but emission of semen is not required."

Sec. 939.22 (36), Stats., provides:

"(36) 'Sexual intercourse' requires only vulvar penetration and does not require emission."

The defense motion to dismiss all but one count rested on the argument that the counts were multiplicitous because all of the acts arose out of one incident. The state argues that each of the acts alleged was a separate instance of prohibited sexual assault and, although they took place during one period of time, each act was separate and distinct from the others, and that there were four separate penetrations different in kind and at different times.

The trial court ruled in favor of the defendant, concluding that, although the various acts were separate and different, they all constituted elements of the same offense under the statute and arose out of the same course of conduct. The court specifically provided that evidence of the four types of sexual conduct could be offered at trial as proof of the single count.

The general problem of multiplicity and the underlying prohibition against double jeopardy have been extensively discussed in *State v. Rabe*, 96 Wis.2d 48, 291 N.W.2d 809, of even date herewith, and in *Harrell v. State*, 88 Wis.2d 546, 277 N.W.2d 462 (Ct. App. 1979), and will not be repeated here.[3]

---

[3] While the resolution of this and similar problems involving multiplicity have been cast in the general framework of double jeopardy, a recent case, *Whalen v. United States*, — U.S. — (April 16, 1980), indicates some doubt that the federal constitutional prohibition against double jeopardy is implicated in a single state prosecution wherein multiple penalties are sought to be imposed for a single criminal transaction. Justice Blackmun, in a concurring opinion, stated:

In resolving this appeal contrary to the assertions of the defendant, we rely principally upon the perceived legislative intent and upon the societal interest sought to be protected by the statutes.

In addition, we conclude, contrary to the position taken by the trial court and the court of appeals, each count requires proof of a significant evidentiary fact not required or pertinent to proof of the other counts.

We believe the court of appeals also erred when it equated the additional-fact or additional-evidence test with the additional-element test. It is, of course, true that the charging of a second crime which requires proof of an *additional* element eliminates the possibility of multiplicity. But it is logically erroneous to assume the converse—that only the charging of an unrelated element will satisfy the test. Proof of any of the four sep-

"The *only* function the Double Jeopardy Clause serves in cases challenging multiple punishments is to prevent the prosecutor from bringing more charges, and the sentencing court from imposing greater punishments, than the Legislative Branch intended. It serves, in my considered view, nothing more. 'Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.' *Brown v. Ohio,* 432 U.S. 161, 165 (1977).

"Dicta in recent opinions of this Court at least have suggested, and I now think wrongly, that the Double Jeopardy Clause may prevent the imposition of cumulative punishments in situations in which the Legislative Branch *clearly intended* that multiple penalties be imposed for a single criminal transaction. See *Simpson v. United States,* 435 U.S. 6, 11–13 (1978); *Jeffers v. United States,* 432 U.S. 137, 155 (1977) (plurality opinion). I believe that the Court should take the opportunity presented by this case to repudiate those dicta squarely, and to hold clearly that the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed."

Justices Rehnquist, White, and C. J. Burger in separate opinions agreed with Justice Blackmun's rationale.

arate assaultive acts is sufficient to furnish a factual and legally sufficient element for a single charge under sec. 940.225, Stats. But that is not the question. The question is whether the elements, which are legally identical, are sufficiently different in fact to demonstrate that a separate crime has been committed.

In the present case, sexual intercourse was accomplished by four separate bodily intrusions, each of which is defined in the statutes. Sec. 940.225 (5) (c), Stats. In law they are the same in the sense that each would constitute a legal predicate for prosecution under the statute.

An analogous rationale was utilized in *Anderson v. State*, 221 Wis. 78, 265 N.W. 210 (1936), when this court affirmed a conviction on a charge of embezzling tax funds in October when the defendant had previously been acquitted of a charge under the same statute of embezzling funds in August. The court emphasized that, "The two offenses were the same in law but not in fact. The same act does not constitute both offenses." (at 87) The statement serves to illustrate the point that merely because the same elements appear in separately charged crimes does not resolve the question of multiplicity. We do not carry the analogy further, because in *Anderson* the factual conduct which was the same in kind took place at substantially different times.

In the instant case the conduct was, we conclude, substantially different in fact, although not in law, and took place within a relatively short period. We conclude that under Wisconsin law the allegation of substitute facts, all of which furnish the same legal element of the crime, does not result in multiplicitous charges if these facts are either separated in time or are of a significantly different nature in fact.[4]

---

[4] Supportive of this general proposition are this court's holdings in *Madison v. Nickel*, 66 Wis.2d 71, 223 N.W.2d 865 (1974), and

The mere fact that factual elements are somewhat different does not, however, resolve the question or terminate our inquiry in determination of the question of multiplicity. *Blenski v. State,* 73 Wis.2d 685, 245 N.W. 2d 906 (1976), illustrates the point. This court refused to allow multiple prosecutions where illegal solicitations were effected by use of multiple testimonials by different persons who had not given consent to have their names used for that purpose. The court reasoned that the use of different names did not result in multiple crimes, because the legislative intent was not to protect persons whose names were used without authorization, but rather to protect the public against fraudulent charitable solicitations. In the context of *Blenski,* the additional fact, the use of different unauthorized names, was, in view of the legislative intent, not sufficient to demonstrate that the crimes were so significantly different that they were separately chargeable.

The rationale was discussed by Judge Rutledge in his concurring opinion in *District of Columbia v. Buckley,* 128 F.2d 17, 21 (D.C. Cir. 1942) :

"Usually the difference will be substantial and this will be immediately apparent when the test is applied. In other words, most crimes have substantial differences. But in some instances legislative refinement has defined generically identical offenses with narrow differences in intent or in the means or methods of perpetration,

*Melby v. State,* 70 Wis.2d 368, 234 N.W.2d 634 (1975). In each case it was assumed that the crimes that could be charged separately were dependent upon proof of the same legal element—in *Nickel,* the sale of an obscene magazine; in *Melby,* the possession of a dangerous drug. The implicit rationale of these cases was that the elements charged were either significantly factually different or were by the statutory scheme made separate and independent crimes although the multiple counts arose out of the same unitary incident. And as we held in *State v. Rabe, supra,* the same act causing multiple consequences may permit several charges if that result is consistent with legislative intent and public policy.

e.g., assault with various specific intents and with variously specified weapons. Some of these differences are substantial, others too slender for, in effect, nullifying the constitutional protection against double jeopardy. When they are so or the question is doubtful, the second step should be taken consciously and deliberately, not ignored or taken automatically as is done when the process stops with applying the 'same or different evidence' test. That can only tell what the difference is, not whether it is important enough to prevent operation of the constitutional guaranty."

In the recent case of *Harrell v. State*, 88 Wis.2d 546, 277 N.W.2d 462 (Ct. App. 1979), the court of appeals carefully set forth the general rules involving multiplicity and double jeopardy. Although these general rules are highly significant for the underpinning of this opinion, the *Harrell* case differed from this one because the assaultive act—forcible unconsented vaginal intercourse —was the same in the successive crimes charged and a significant period of time elapsed between the two assaults. Accordingly, the court of appeals could properly conclude in *Harrell* that the separate acts of rape were separately punishable. In the instant case, the time elapsed between the acts charged is not significant enough to make the time interval alone controlling. Rather, it is the different nature of the acts which we deem to be of importance. Frank J. Remington and Allan J. Joseph, *Charging, Convicting, and Sentencing the Multiple Criminal Offender*, 1961 Wis. Law Rev. 528, 545, state:

"It is generally accurate to say that there may be a conviction for more than one offense only where (a) each is based upon different conduct, or (b) if based on the same conduct, each offense requires proof of a fact not required by the other."

A similar rationale is followed in 1 Wharton, *Criminal Law and Procedure*, sec. 32, pp. 67–8. The general rule is stated:

". . . when different crimes are committed, each may be prosecuted separately although all form part of one transaction or sequence of events. Crimes are different when the evidence necessary to establish one differs from that required to establish the other."

When the analysis of Judge Rutledge is applied, it appears that the quotation from Wharton essentially begs the question, at least in respect to the case before us. While it is clear that evidence necessary to furnish the proof for one count in the information proffered by the prosecutor is different from that in the other counts, it is nevertheless indisputable that each constitutes an element of the same statutory crime. Were we to find that the incidents were clearly separated in time, as in *Harrell, supra,* separate crimes would be chargeable; but that rationale cannot under the facts resolve this case. Basically, where problems of double jeopardy or multiplicity arise, the question is one of fundamental fairness or prejudice to the defendant. A defendant ought not be charged, tried, or convicted for offenses that are substantially alike when they are a part of the same general transaction or episode. To do so would impose jeopardy of multiple trials or convictions for a single offense.

Accordingly, the appropriate question is whether these acts allegedly committed by Eisch are so significantly different in fact that they may properly be denominated separate crimes although each would furnish a factual underpinning or a substitute legal element for the violation of the same statute. We conclude that they are.

Initially, it should be noted that the acts of cunnilingus, fellatio, anal intercourse, and intrusion of an object into a genital opening are separately enumerated in sec. 940.225 (5) (c), Stats., as types of sexual intercourse encompassed in sec. 940.225 (2) (a). Vaginal intercourse,

as defined by sec. 939.22(36), is incorporated by reference by sec. 940.225(5)(c). It is apparent, therefore, that although the legislature concluded that these different acts were to be deemed to be the same in law, they were so different in fact that a specific incorporation in the definition of sexual intercourse was required to make them applicable to the substantive crime of second degree sexual assault. This legislative manifestation is, of course, no more than a recognition given to facts and circumstances as they are commonly known to exist. Each of these methods of bodily intrusion is different in nature and character.

It should also be emphasized that, prior to the revision of the statutes in 1977, the acts of cunnilingus, fellatio, and anal intercourse were separate crimes and were chargeable in separate and additional counts in a prosecution where the principal charge was rape.

*Harrell v. State, supra,* points out that, under the law in effect prior to the revision of the statutes effective in this case, rape and sexual perversion could be appropriately prosecuted in separate counts. As *Harrell* demonstrates in a review of numerous cases of this court, at 562–63, acts of sexual perversion identical to those charged in the instant case were previously chargeable as separate crimes, although the rape and the perversion were performed upon the same victim in one continuous or unitary episode.

It is apparent that the legislature has recognized these acts, formerly denominated as perversions, to be so significantly different in nature as to warrant charging separately from the act of vaginal sexual intercourse. It is also significant to note that these types of conduct which constitute second degree sexual assault when combined with the use or threat of force or violence remain crimes against sexual morality as defined in ch. 944, Stats., and are punishable as misdemeanors.

It is clear, then, that our decisional and legislative history recognizes that the acts with which the defendant has been charged constitute separate crimes which may be charged separately. This demonstrates a legislative recognition that the crimes are significantly different in their nature and, as a matter of legislatively declared public policy, may be charged separately.

In addition to the fact that the crimes are different in nature, it is apparent that each requires a separate volitional act. The act of forced fellatio, forced anal intercourse, forced vaginal intercourse, and forced intrusion of the bottle required a new volitional departure in the defendant's course of conduct.

In this respect the observation of Judge Leventhal in the concurring opinion to *Irby v. United States,* 390 F. 2d 432, 435 (D.C. Cir. 1967), is also appropriate. Judge Leventhal stated:

"If at the scene of a crime the defendant can be said to have realized that he has come to a fork in the road, and nevertheless decides to invade a different interest, then his successive intentions make him subject to cumulative punishment, and he must be treated as accepting that risk, whether he in fact knows of it or not." (at 437–38)

While in the instant case the general interest to be protected by the statutes, irrespective of the type of sexual intercourse indulged in, is the same—freedom from sexual assault—we nevertheless conclude that the particularized legislatively expressed interest of society to protect persons from each of these distinct types of assault is significant. Accordingly, we conclude that, by embarking on a course of a different type of intrusion on the body of a victim, a different legislatively protected interest is invaded.

While intent is not, strictly speaking, an element of rape, there nevertheless was an exercise of separate

volition; and, certainly, as *Harrell* points out on page 574, different and distinct volitional acts are employed in the perpetration of each separately defined act of intercourse.

Although the facts upon which we are obliged to rely in the procedural posture of this case are skeletal, it is apparent that each of the alleged acts of intercourse was accompanied by separate threats and separate and distinct use of force to accomplish the particular act.

As stated in *Lillard v. State*, 528 S.W.2d 207, 211 (Tenn. Ct. App. 1975), a case involving multiple rapes:

"Additional orders were given to the captive female, an intent to have her again was formed and manifested, and the crime committed. Certainly there was separate and additional fear, humiliation and danger to the victim."

While *Lillard* involved rapes committed at different times and places, we nevertheless believe the quotation accurately typifies the situation herein. Certainly, each act separately resulted in injury, pain, danger, fear, and humiliation to the victim. It can hardly be said that the assaultive acts allegedly committed by the defendant were so similar in nature that they merged one into the other so as to be treated as but one offense. Each was perpetrated by the exercise of separate volitional acts, each involved a different area of the victim's body, each required separate application of force and threat, and each resulted in a new and different humiliation, danger, and pain.

The general legislative intent of the statutory revision should also be considered. We take judicial notice that the revision of the statutes originating in 1975 (S.B. 233), which found its place in the Laws of 1975 and 1977, was the result of a legislatively perceived need to broaden the protections afforded by what had previously been referred to as crimes against sexual morality. The

new laws recognized that forcible sexual assaults constitute threats to life and bodily security. The legislature recognized that what had previously been considered as perversions when coupled with force constituted dangerous threats to life and bodily security.

To accept the assertion of the defendant that the theretofore existing crimes of cunnilingus, fellatio, anal intercourse, or other genital intrusions were to be subsumed under the single chargeable category of sexual assault would require us to reach the general conclusion that it was the legislative intent to permit the charging of but one crime where multiple crimes could be charged before. This flies in the face of the legislative history and of common sense. We are satisfied that a reasonable ascertainment of legislative intent leads to the conclusion that these crimes may be charged separately. Although there is no precise statement in the statutes clearly indicative of the legislature's intent that these crimes may be charged separately, the United States Supreme Court in *Bell v. United States,* 349 U.S. 81, 83 (1955), stated that statutes should be read "with the saving grace of common sense."

Judge Leventhal in *Irby, supra* at 436, stated this rationale somewhat differently. He pointed out that it is frequently difficult to determine a precise legislative intent on cumulation of punishment in relation to a group of offenses. He stated:

"In the absence of other, specific legislative intention on the side of either lenity or harshness, we can only invoke a generalized legislative intent. This is more likely presumed than real, and embodies a large standard of reasonableness and fairness to offenders and society alike."

This standard of reasonableness and fairness is but another statement of the rule of common sense. We conclude that, as a matter of common sense, the legislative

history reasonably demonstrates that these offenses may be separately charged and that to do so is not unfair or prejudicial to an offender who has committed crimes which are significantly factually different. So charging furthers the general societal interest of protecting individuals from multiple assaults which, although closely connected in time, nevertheless impose separate and distinct dangers to a victim. As stated in *Harrell*, each assault constitutes "a further denigration of the victim's integrity." (at 565)

Following the general analysis suggested by Judge Rutledge in *District of Columbia v. Buckley, supra,* we therefore conclude that the distinction between these crimes is not trivial and that to charge them separately does not result in multiplicity or even arguably invade the constitutionally protected right against double jeopardy.

The decision we reach in this case is consistent with that reached in other jurisdictions. We acknowledge, of course, that the precise facts of this case make it *sui generis*. No other case has been brought to our attention where multiple and separately defined acts of sexual intercourse all constitute an alternative or substitute legal element of the same statutorily defined crime. Cases from other jurisdictions are, however, persuasive and probative.

In general, as stated in *Lillard v. State, supra,* most jurisdictions hold, relying upon Wharton, *supra,* sec. 304, p. 635, " 'Each act of intercourse is a separate offense.' " 528 S.W.2d at 210.

In *People v. Robinson,* 80 Mich. App. 559, 264 N.W.2d 58 (1978), the court of appeals of the State of Michigan followed the rationale of *People v. Johnson,* 75 Mich. App. 221, 225 N.W.2d 207 (1977), which held that each sexual penetration resulted in a distinct offense. In *Robinson,* it was held that a forced act of sexual inter-

course by vaginal penetration and an act of fellatio could be charged separately, because each constituted a separate penetration. Although the facts of *Robinson* indicate that the penetrations were separated in time, the court stressed and relied upon the proposition that "A defendant may be convicted and punished for each act of sexual penetration." (at 566) The term, "sexual penetration," as used in the Michigan statutes, is analogous to the term, "intrusion," as used in sec. 940.225(5)(c), Stats.

The Michigan Supreme Court in *People v. Johnson,* 406 Mich. 320, 279 N.W.2d 534 (1979), although setting aside portions of the court of appeals' precise holding in the same case, nevertheless concluded that each sexual penetration constituted a separate crime. It pointed out, however, that a single penetration under aggravated circumstances (armed robbery) did not give rise to an additional charge of sexual assault and that one penetration could give rise to but one crime.

In *State v. Bussiere,* 118 N.H. 659, 392 A.2d 151 (1978), the New Hampshire court followed the rationale of the Michigan case of *Robinson* and held that a defendant may be separately indicted and convicted of intercourse and fellatio. Although the two acts took place during the same assaultive incident, they nevertheless were chargeable as separate crimes.

In *Arizona v. Hill,* 104 Ariz. 238, 450 P.2d 696 (1969), the victim was attacked in her own bed, and during a period of one and one-half hours was compelled by force to engage in acts of cunnilingus, fellatio, and sexual intercourse. The court held:

"When several acts of intercourse and several lewd and lascivious acts are committed on the same victim we see no reason why as many counts for each offense cannot be brought, despite the fact the defendant never left his victim's bed during the course of the commission of the acts." (at 240)

In *People v. Helton,* 39 Ill. App.3d 672, 349 N.E.2d 508 (1976), the victim was assaulted in her home by successive acts of fellatio and anal intercourse. The defendant's argument was that there could be but one count because the acts charged were part of a single course of conduct in which the defendant's motivation was the same. The court held that the defendant was properly convicted of separate offenses against the same victim, although all were done for the purpose of sexual gratification.

A similar rationale was employed by the Oregon Supreme Court in *State v. Steele,* 33 Or. App. 491, 577 P. 2d 524 (1978). There the defendant was charged with oral and anal sodomy of the same victim within a short period of time. The court concluded, at 499:

"We do not believe that the convictions for oral and anal sodomy in the first degree merge as constituting but one crime. The victim was exposed to additional fear, humiliation and danger during the second sodomy. We see no reason why we should hold that a man who commits one sodomy may do so again and again to the same victim with impunity. . . . The defendant's two acts of sodomy constituted two separate crimes, separately punishable."

In *Missouri v. Dennis,* 537 S.W.2d 652 (Mo. Ct. App. 1976), the court of appeals held that rape is not a continuing offense and each act of intercourse constituted a distinct and separate offense. It relied upon the reasoning of *Lillard.*

The Supreme Court of Colorado, in the case of *People v. Saars,* 584 P.2d 622 (Colo. 1978), upheld convictions on three separate charges of sexual assault. All of the assaults took place on a single afternoon in the victim's apartment. The assaults involved anal intercourse, fellatio, cunnilingus, and forced vaginal intercourse. The Colorado court stated:

"There is ample evidence to support a separate charge and conviction for each act, and therefore we hold that

the prosecution properly charged three counts of first-degree sexual assault." (at —; 584 P.2d at 629) (Only three counts were upheld because the cunnilingus and fellatio were performed simultaneously.)

These cases are significant in that they recognize the general public policy that different types of sexual intercourse constitute different crimes although they take place during a short period of time and are a part of the same assaultive episode. Some of these cases conclude that the same kind of sexual intercourse when repeated without an interval between the acts constitutes separate crimes, because each was the result of a separate penetration. We do not so hold. That question is not presented by the facts in this case. We hold only that the four acts of sexual intercourse here that are different in kind constitute separately defined statutory crimes that are factually different in a significant way; and, where as here, the statutory history evinces a legislative intent that they are significantly different, they may be separately charged although arising out of a unitary assaultive episode perpetrated upon the body of the same victim. Where the same type of sexual assault is performed on the body of the same victim under the factual circumstances set forth in *Harrell, supra*, the rationale employed there is appropriate.

We conclude that the information charging Eisch with four counts of sexual assault was not multiplicitous and did not place him twice in jeopardy for the same offense. We reverse the trial court's order amending the information to charge but one count and direct that the state's information be reinstated.[5]

---

[5] In passing, we note our agreement with the state's ancillary argument that submission of proof of the four separate offenses in support of a single count may well deprive the defendant of the right to a unanimous jury verdict. *See, Harrell v. State, supra* at 568.

*By the Court.*—Decision of court of appeals reversed; order of circuit court reversed, and cause remanded to the circuit court for further proceedings consistent with this opinion.