PER CURIAM.
¶1 Travis D. Jones appeals from a judgment of conviction for one count of kidnapping and two counts of second-degree sexual assault with use of force. See WIS. STAT. §§ 940.31(1)(a) and 940.225(2)(a) (2013-14).[1] He also appeals from the denial of his postconviction motion. Jones argues that his trial counsel provided ineffective assistance by failing to assert that the sexual assault charges were multiplicitous and by failing to object to what Jones terms "the trial court's reliance upon impermissible factors at the sentencing hearing." (Capitalization omitted.) We reject his arguments and affirm.
BACKGROUND
¶2 According to the criminal complaint, police officers were called to a bus stop after a woman approached two people at the bus stop and told them she had just been sexually assaulted by a man dressed in black. The eighteen-year-old woman, S.G., told the police that the man approached her while she was waiting for the bus, forced her into an empty lot, and assaulted her. The complaint described the information a detective gathered from S.G. concerning the assault:
The man punched [S.G.] in the stomach and when she fell to the ground, he partially removed [S.G.'s] pants. The man then attempted to penetrate [S.G.'s] vagina with his penis, but was unsuccessful, so he attempted to penetrate her anus with his penis. The man then was able to penetrate her vagina, and after about 10 minutes he got up, took [her phone] ... and ran off.
S.G. underwent a sexual assault examination at the hospital, where DNA evidence was collected. About one month later, the police were notified that the DNA on the vaginal swab collected from S.G. had been matched to Jones, a known offender whose DNA profile was on file.
¶3 Jones was charged with one count of kidnapping, one count of first-degree sexual assault (penis-to-vagina contact) by threat of use of a dangerous weapon, and one count of first-degree sexual assault (penis-to-vagina intercourse) by threat of use of a dangerous weapon. The sexual assault charges were later amended to two counts of second-degree sexual assault, including one count of penis-to-anus sexual contact and one count of penis-to-vagina sexual intercourse.
¶4 About a month after the charges were amended, new trial counsel was appointed for Jones. The case proceeded to a jury trial. The victim testified about the assault, and the jury also heard from a detective and a nurse who testified about what S.G. told them about the assault. Jones was convicted of all charges and subsequently sentenced to a total of forty-five years of initial confinement and twenty-five years of extended supervision.
¶5 After postconviction counsel was appointed, Jones filed a postconviction motion alleging that his trial counsel provided ineffective assistance in two ways: (1) failing to file a motion before or during trial alleging that the sexual assault charges were multiplicitous; and (2) failing to object to the trial court's reliance on two facts at sentencing.[2] The trial court denied the motion in a written order without holding an evidentiary hearing.[3] This appeal follows.
LEGAL STANDARDS
¶6 In order to obtain a hearing on a postconviction motion, a defendant must allege material facts sufficient to warrant the relief sought. State v. Allen , 2004 WI 106, ¶¶9, 36, 274 Wis. 2d 568, 682 N.W.2d 433. "[I]f the motion does not raise such facts, 'or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief,' " the trial court may deny the motion without a hearing. State v. Balliette , 2011 WI 79, ¶18, 336 Wis. 2d 358, 805 N.W.2d 334 (citation omitted). In the context of a claim of ineffective assistance of counsel, the defendant must allege facts that, if true, establish that counsel's performance was deficient and that the defendant was prejudiced by that deficient performance. See Strickland v. Washington , 466 U.S. 668, 687 (1984). A court may consider either deficiency or prejudice first, and if the defendant fails to satisfy one prong, the court need not address the other. See id. at 697. We independently determine whether a postconviction motion has alleged sufficient facts to entitle the defendant to a hearing as a matter of right. Allen , 274 Wis. 2d 568, ¶9. If the allegations are insufficient, the trial court has discretion to decide whether to grant a hearing. Id.
DISCUSSION
¶7 On appeal, Jones again argues that his trial counsel provided ineffective assistance by failing to assert that the two sexual assault counts were multiplicitous and by failing to object to the trial court's reliance on certain facts at sentencing. We consider each issue in turn.
I. Multiplicity challenge
¶8 Charges that are multiplicitous violate the double jeopardy clauses of the United States and Wisconsin Constitutions. See State v. Steinhardt , 2017 WI 62, ¶13, 375 Wis. 2d 712, 896 N.W.2d 700. Steinhardt summarized the applicable legal standards:
We apply a two-pronged test to determine whether charges are multiplicitous. Under the first prong, we ask "whether the charged offenses are identical in law and fact." Under the second prong, the question is "if the offenses are not identical in law and fact, whether the legislature intended the multiple offenses to be brought as a single count."
Id. , ¶14 (citations omitted). "Whether a multiplicity violation exists in a given case is a question of law that we review de novo ." State v. Koller , 2001 WI App 253, ¶32, 248 Wis. 2d 259, 635 N.W.2d 838 (italics added).
¶9 In this case, it is undisputed that the two counts of second-degree sexual assault are identical in law, as both counts allege a violation of WIS. STAT. § 940.225(2)(a) (2013-14). Thus, the determinative issue is whether the two charges are identical in fact. "The 'identical in fact' inquiry ... involves a determination of whether the charged acts are 'separated in time or are of a significantly different nature.' " Koller , 248 Wis. 2d 259, ¶31 (quoting State v. Eisch , 96 Wis. 2d 25, 31, 291 N.W.2d 800 (1980) ).
¶10 "When analyzing whether acts are significantly different in nature, '[t]he question is whether the elements, which are legally identical, are sufficiently different in fact to demonstrate that a separate crime has been committed.' " Steinhardt , 375 Wis. 2d 712, ¶20 (citation omitted; bracketing in Steinhardt ). Steinhardt continued:
Accordingly, this court concluded in Eisch that conviction for four different counts of "forcible and unconsented sexual intercourse" did not violate double jeopardy because each sexual act was "of a significantly different nature in fact." The defendant in Eisch had vaginal intercourse with the victim, inserted his penis into the victim's anus, inserted a beer bottle into the victim's vagina, and inserted his penis into the victim's mouth. In concluding that no double jeopardy violation existed, this court said, "[I]t is the different nature of the acts which we deem to be of importance." Given the different nature of the acts, it mattered not that all of the acts occurred within the same incident.
Steinhardt , 375 Wis. 2d 712, ¶20 (citations omitted). In Eisch , the court noted that not only were the four acts different in nature, each act required "a separate volitional act." See id. , 96 Wis. 2d at 36. Eisch explained: "The act of forced fellatio, forced anal intercourse, forced vaginal intercourse, and forced intrusion of the bottle required a new volitional departure in the defendant's course of conduct." See id.
¶11 Applying those standards here, we conclude that the two sexual assaults were " 'of a significantly different nature.' " See Koller , 248 Wis. 2d 259, ¶31 (citation omitted). Count 2 against Jones alleged penis-to-vagina sexual intercourse, while Count 3 alleged penis-to-anus sexual contact.[4] As in Eisch , each count involved a different "intimate part" of the victim. See WIS. STAT. § 939.22(19) (" 'Intimate parts' " means the breast, buttock, anus, groin, scrotum, penis, vagina or pubic mound of a human being."). The penis-to-vagina intercourse and the penis-to-anus contact were different acts. See Harrell v. State , 88 Wis. 2d 546, 573, 277 N.W.2d 462 (Ct. App. 1979) ("Invasion of different intimate parts of the victim's body demonstrates different kinds and means of sexual abuse or gratification and therefore different acts.").
¶12 Jones disagrees, asserting that the two assaults were identical in fact because they "occurred as a single course of conduct that ... did not last more than a few minutes." Jones relies on this court's decision in State v. Hirsch , 140 Wis. 2d 468, 410 N.W.2d 638 (Ct. App. 1987), where this court considered whether three sexual assault charges were multiplicitous. The complaint against Hirsch alleged that he touched the victim's vaginal area, then her anal area, and then her vaginal area a second time. See id. at 470. Hirsch concluded that the three acts were "not 'so significantly different in fact that they may be properly denominated separate crimes.' " Id. at 474 (citation omitted). Hirsch explained:
First, the alleged actions are extremely similar in nature and character. Hirsch allegedly committed all three "touchings" with his hand, and two of the three involved the same body part. Hirsch allegedly moved his hand from [the victim's] vagina to her anus and back again. Although the amended complaint alleges that Hirsch physically turned her over, we cannot say that the touchings were not part of the same general transaction or episode.
Second, although the precise time period within which the touchings occurred is not set forth in either the information or the complaint, it is apparent that the episode took no more than a few minutes. There was apparently little, if any, lapse of time between the alleged acts. Given the short time frame, we cannot say that "the defendant had sufficient time for reflection between the assaultive acts to again commit himself." There was no pausing for contemplation as in Harrell , nor was there a significant change in activity as in Eisch .
Hirsch , 140 Wis. 2d at 474-75 (citations omitted).
¶13 The State argues that Hirsch is distinguishable from the facts in this case.[5] For instance, the State explains, "Jones did not simply move his hand from [S.G.'s] vagina to her buttocks to her vagina. Jones attempted to penetrate multiple parts of [S.G.'s] body. Attempting to insert his penis into her vagina and her anus is different than a hand sliding over two body parts in one passing."
¶14 We agree with the State that Hirsch can be distinguished. The facts in this case are closer to the facts in Eisch and a more recent Wisconsin Supreme Court case, State v. Ziegler , 2012 WI 73, 342 Wis. 2d 256, 816 N.W.2d 238, which discussed both Eisch and Hirsch . In Ziegler , the defendant was charged with five counts of second-degree sexual assault for engaging in five different sex acts with the victim, Nicole, in a single night. See id. , 342 Wis. 2d 256, ¶¶19-20. The court rejected Ziegler's argument that the charges were identical in fact, explaining:
Comparing Eisch and Hirsch to the instant case, it is readily apparent that the five alleged acts ... are much more akin to those acts at issue in Eisch . The five alleged acts-fellatio, digital penetration of Nicole's vagina, the touching of Nicole's breasts, the touching of Ziegler's penis, and the striking of Nicole's buttocks-are significantly different in nature, involving different methods of intrusion and contact and different areas of Ziegler and Nicole's bodies. While the five alleged acts took place in the course of the same evening, each act is distinct and hence "required a new volitional departure" in Ziegler's course of conduct. Accordingly, we conclude that the five alleged acts are sufficiently different in fact to demonstrate that Ziegler committed five separate crimes.
Ziegler , 342 Wis. 2d 256, ¶73 (citations omitted).
¶15 Similarly, the two sexual acts in this case involved different methods of intrusion-sexual contact versus penetration-and different body parts of the victim. Moreover, the testimony introduced at both the preliminary hearing and at trial was that Jones unsuccessfully attempted penis-to-vagina sexual intercourse (which was not charged in the amended information), then unsuccessfully attempted anal intercourse (which was the basis for the penis-to-anus contact charge that was later amended to penis-to-buttocks contact), and then successfully engaged in penis-to-vagina sexual intercourse (which was the basis for the penis-to-vagina sexual intercourse charge). This suggests that the acts were "distinct" and " 'required a new volitional departure' in [Jones's] course of conduct."[6] ibr.US_Case_Law.Schema.Case_Body:v1">See id. (citation omitted). Like the court in Ziegler , we conclude that the "alleged acts [were] sufficiently different in fact to demonstrate" that Jones committed separate crimes. See id.
¶16 Having concluded that the two sexual assault charges were not identical in fact, the next question is " 'whether the legislature intended the multiple offenses to be brought as a single count.' " See Steinhardt , 375 Wis. 2d 712, ¶14 (citation omitted). Jones has not attempted "to overcome the presumption that the legislature intended to permit multiple punishments," so we decline to discuss this issue. See Koller , 248 Wis. 2d 259, ¶30.
¶17 In summary, we conclude that the two charges were not multiplicitous. Accordingly, trial counsel did not perform deficiently by failing to assert that the charges were multiplicitous, and Jones's ineffective assistance claim fails. See Strickland , 466 U.S. at 687, 697. Furthermore, because "the record conclusively demonstrate[d]" that Jones was not entitled to relief, it was within the trial court's discretion to deny the postconviction motion without a hearing. See Balliette , 336 Wis. 2d 358, ¶18.
II. Sentencing challenge
¶18 Jones argues that his trial counsel provided ineffective assistance when he failed to object to statements by the trial court at the sentencing hearing that indicated the trial court was relying on impermissible sentencing factors. A sentencing court erroneously exercises its discretion when it actually relies on a clearly irrelevant or improper factor. State v. Alexander , 2015 WI 6, ¶17, 360 Wis. 2d 292, 858 N.W.2d 662. "A defendant bears the burden of proving, by clear and convincing evidence, that the sentencing court actually relied on irrelevant or improper factors." Id.
¶19 Jones objects to the trial court's references to the fact that the victim was an immigrant and was waiting at a bus stop at the time of the assault. The trial court said:
Here the matter is even more aggravated because of the situation with regard to this young, young victim. She's come to this country seeking a new life, and instead ends up here in this matter being victimized by a criminal. She was trying to improve her life by attending classes, very impressively, during the day and at night. She indicated she was trying to go to classes at night time because she just didn't like the group home she was in and so she was spending her time getting an education, improving her life along those lines.
She had to use public transportation and while she's changing buses this crime occurs. People anywhere in this community using public transportation should feel that they are safe to be able to use that public transportation without being assaulted at a bus stop.
When these types of activities happen and someone gets assaulted under those circumstances it makes it more difficult for other people in the community who need to rely on public transportation who don't have vehicles, who must rely on the public transportation for going to school, going to work, getting their groceries. They shouldn't have to be fearful that this type of act will happen. And here Mr. Jones has added to fear that this type of activity could occur at a bus stop anywhere in this community.
¶20 Jones argues that this language indicates the trial court relied on "the victim's immigration status," and Jones asserts that was improper. He cites State v. Gayton , 2016 WI 58, 370 Wis. 2d 264, 882 N.W.2d 459 for the proposition that "[a d]efendant's race, nationality, or legal immigration status, play no adverse role in the administration of justice, including at sentencing." We are not persuaded that Gayton is instructive on the issue Jones has raised. First, Gayton involved references to a defendant's immigration status, not the victim's immigration status. Second, although Gayton recognized that "[a] defendant's nationality is one of several factors that a court may not rely upon when imposing a sentence," see id. , ¶25, Gayton ultimately upheld a sentence where the trial court's reference to the defendant's "immigration status implicated the unlawful aspects of his presence in the United States, which were directly relevant to his conviction for homicide while operating a vehicle without a driver's license,"see id. , ¶37. In short, Gayton does not provide support for Jones's assertion that the trial court was prohibited from referring to the fact that the victim came from another country.
¶21 Having reviewed the trial court's sentencing comments in their entirety, we are not persuaded that it was improper for the trial court to reference the fact that S.G. was an immigrant. Our supreme court has recognized that the victim's "good character" may be relevant to sentencing. See State v. Gallion , 2004 WI 42, ¶68, 270 Wis. 2d 535, 678 N.W.2d 197. Gallion further recognized that the court can consider "the impact of the crime on the victim." See id. , ¶65. " 'A statement from the victims about how the crime affected their lives is relevant to one of the considerations that a judge must take into account at sentencing-the gravity of the crime.' " Id. , ¶65 (citation omitted). The trial court acted within its discretion when it considered the impact of the crime on a young woman who was already struggling to improve her life after immigrating and being placed in a group home.
¶22 Similarly, we reject Jones's argument that the trial court's reference to the location of the offense-a bus stop-was irrelevant. Sentencing courts are required to consider "the gravity of the offense" and "the need to protect the community." See id. , ¶13. The fact that this victim and others who hear about the crime may fear taking public transportation is a relevant factor for the trial court to consider. We are not persuaded that trial counsel performed deficiently by failing to object to the trial court's comments about the location of the crime.
¶23 Having concluded that the trial court did not rely on improper factors, we conclude that Jones has not shown that his trial counsel performed deficiently by failing to object to the trial court's comments. Because "the record conclusively demonstrate[d]" that Jones was not entitled to relief, it was within the trial court's discretion to deny Jones's postconviction motion without a hearing. See Balliette , 336 Wis. 2d 358, ¶18. We discern no erroneous exercise of that discretion.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The postconviction motion and Jones's appellate brief make clear that he is challenging only the effectiveness of the attorney who began representing him shortly after the amended information was filed.

The Honorable Daniel L. Konkol presided over the jury trial and sentenced Jones. The Honorable Carolina Stark, who was assigned the case due to judicial rotation, denied the postconviction motion.

At trial, after both sides rested, the State moved to amend Court 3 to penis-to-buttocks contact, which was more consistent with the testimony that Jones's DNA was found on swabs taken from the victim's buttocks. The trial court granted the motion, noting: "The statute does provide touching to the buttocks which would still be sexual contact and that would be consistent with the evidence." See Wis. Stat. § 939.22(19) (" 'Intimate parts' " means the breast, buttock, anus, groin, scrotum, penis, vagina or pubic mound of a human being."); Wis. Stat . § 948.01(5)(a)1. (definition of "Sexual contact" includes "[i]ntentional touching by the defendant ... by the use of any body part or object, of the complainant's intimate parts.").

The State also argues that State v. Hirsch , 140 Wis. 2d 468, 410 N.W.2d 638 (Ct. App. 1987), "was arguably wrongfully decided because it conflicts" with Harrell v. State , 88 Wis. 2d 546, 573, 277 N.W.2d 462 (Ct. App. 1979). The State indicates that it may challenge the correctness of the Hirsch decision if either party files a petition for review with the Wisconsin Supreme Court.

The trial court reached this same conclusion in its order denying the postconviction motion, stating:
Jones initially intended to perform penis-to-vagina intercourse with [S.G.]. However, as his attempt to penetrate her vagina with his penis was unsuccessful, he had time to reflect on his conduct, even if briefly, and he decided to perform penis-to-anus intercourse with her. Jones departed from his attempt at penis-to-vagina intercourse and made a commitment to a new volitional course of conduct by turning her over and touching her buttocks with his penis (count 3) in an intentional attempt to penetrate her anus with his penis. As his penis touched her buttocks but was unable to penetrate her anus, Jones again had time to reflect on his conduct, even if briefly, and he decided to depart from his attempt at penis-to-anus intercourse and made a commitment to a new volitional course of conduct by penetrating her vagina with his penis (count 2). Therefore, while the offenses in counts 2 and 3 are identical in law, they are not identical in fact.
We agree with this analysis.