COURT OF APPEALS
DECISION
DATED AND FILED

March 3, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP516-CR**

Cir. Ct. No.  **2017CF2528**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

QUINCY J. CLARK,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dane County:  SUSAN M. CRAWFORD, Judge.  *Affirmed*.

Before Blanchard, P.J., Kloppenburg, and Fitzpatrick, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Quincy Clark appeals a judgment of conviction and an order denying his motion for postconviction relief.  Clark contends that the

circuit court erred by denying his request to substitute counsel on the first day of trial; that his trial counsel was ineffective by failing to object to the State's cross-examination and closing arguments; and that his two counts of conviction for sexual assault were multiplicitous. For the reasons set forth in this opinion, we reject those contentions. We affirm.

¶2      Clark was charged with two counts of third-degree sexual assault, aggravated battery, misdemeanor battery, disorderly conduct, and capturing an intimate representation without consent. The charges stemmed from two incidents of alleged domestic abuse by Clark against A.C.,[1] one in June 2017 and one in October 2017.

¶3      On the morning of trial, defense counsel informed the circuit court that Clark wished to discharge counsel. The court said that, before the court would allow defense counsel to withdraw, counsel would need to explain why Clark wanted a change of counsel. Defense counsel explained that Clark was dissatisfied with counsel's representation, and that a new attorney would be appointed for Clark if the court granted the request. The court found that defense counsel's explanation of Clark's dissatisfaction with counsel's representation did not provide a basis to set over the trial to a new date to allow Clark to obtain substitute counsel. The court also told Clark that it would not allow him to address the court personally as to his request for counsel to withdraw. The court directed counsel to meet separately with Clark and explain to him that his options

---

[1] We refer to the victim as "A.C.," rather than by name, because that person was the victim of a crime. *See* WIS. STAT. RULE 809.86(4) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

were to proceed with his current counsel or on his own, but that the trial would be proceeding that day. After the break, Clark continued to trial with counsel.

¶4    At trial, A.C. gave testimony that incriminated Clark, and Clark testified. On cross-examination, the State elicited testimony from Clark that he had been convicted of child neglect for hitting his son with a belt, and the State used that evidence in its closing argument to assert that Clark was violent toward his children. Defense counsel did not object to the cross-examination or that aspect of the closing argument. The jury found Clark guilty of two counts of third-degree sexual assault, misdemeanor battery, and disorderly conduct, all of which arose from the October 2017 domestic abuse incident, and not guilty of the remaining charges.

¶5    Clark filed a postconviction motion arguing that the circuit court erred by denying his request for new counsel; that he was denied the effective assistance of counsel when his counsel failed to object to portions of the State's cross-examination of him or its closing argument; and that his convictions for the two counts of sexual assault were multiplicitous. The circuit court held an evidentiary hearing and then denied the postconviction motion. Clark appeals.

¶6    Clark argues that the circuit court erred by denying Clark's request for new counsel without personally ascertaining from Clark the reasons for his request. That is, he contends that the court erroneously exercised its discretion by denying the substitution request based only on the explanation provided by defense counsel rather than hearing from Clark directly. Clark points to his testimony at the postconviction motion hearing explaining that he wanted new counsel because he did not believe that his counsel had sufficiently reviewed

3

discovery or Clark's notes, and that he did not believe that his counsel was prepared for trial.[2] We are not persuaded.

¶7 Whether to permit substitution of counsel is a matter within the circuit court's discretion. *State v. Jones*, 2010 WI 72, ¶23, 326 Wis. 2d 380, 797 N.W.2d 378. The defendant has the burden of showing good cause to substitute counsel. *State v. Lomax*, 146 Wis. 2d 356, 360, 432 N.W.2d 89 (1988). We consider the following factors to determine whether the circuit court properly exercised its discretion in deciding a request for new counsel: (1) the adequacy of the court's inquiry into the request; (2) the timeliness of the request; and (3) "whether the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case." *Id.* at 359. However, "[m]ere disagreement over trial strategy does not constitute good cause to allow an appointed attorney to withdraw." *State v. Robinson*, 145 Wis. 2d 273, 278, 426 N.W.2d 606 (Ct. App. 1988).

¶8 We will assume, without deciding, that the circuit court erred by not allowing Clark to personally address the court when his attorney conveyed his request to discharge counsel before trial. We conclude that the circuit court

---

[2] Clark also asserts that, when the substitution request was made on the first day of trial, defense counsel "warned [the circuit court] of possible problems in presentation of the case because of Clark's desire to testify" and asserts that "Clark's testimony confirmed those concerns." To the extent that Clark may be arguing that his trial testimony demonstrated that Clark was not prepared to testify at trial based on an alleged breakdown in the relationship between Clark and his counsel, and thus shows that the circuit court erred by denying the substitution request, we reject that argument as insufficiently developed. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we do not address insufficiently developed arguments).

provided an adequate remedy by allowing Clark to provide his reasons for his request at the postconviction hearing.

¶9      In *State v. Kazee*, 146 Wis. 2d 366, 374, 432 N.W.2d 93 (1988), our supreme court held that a circuit court may cure an insufficient inquiry into a defendant's request to substitute counsel through a retrospective determination of the appropriateness of the request. "[I]f an adequate and meaningful inquiry is possible, a retrospective determination of the appropriateness of the request for new counsel should be had rather than automatically granting a new trial." *Id.* at 374.

¶10     Here, the circuit court conducted a postconviction hearing at which the court heard testimony from Clark as to his reasons for requesting substitute counsel on the morning of trial. Clark testified that his biggest issue with his counsel was transparency, or "just getting information." Clark testified that he did not believe that his counsel was prepared for their meetings or that counsel was prepared for trial. Specifically, Clark testified that he did not believe that his counsel had conducted a full review of the discovery or reviewed notes that Clark had provided him.

¶11     After the postconviction hearing, the circuit court found that Clark's testimony at the postconviction motion hearing did not present any significant new facts relevant to his request to substitute counsel. The court found that, considering Clark's testimony, Clark had not shown that his conflict with his attorney was "so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case." *See Lomax*, 146 Wis. 2d at 359.

¶12   Because the circuit court heard from Clark directly at the postconviction motion hearing, Clark's argument that the circuit court erred by failing to inquire of Clark at the time his counsel conveyed the request just before trial is unavailing.  *See Kazee*, 146 Wis. 2d at 374.  Clark does not develop any argument that the court erroneously exercised its discretion under the factors set forth in *Lomax* when the circuit court determined, following the postconviction hearing, that Clark had not established a sufficient basis to substitute counsel on the morning of trial.  Accordingly, we reject Clark's argument that the circuit court erroneously exercised its discretion by denying the substitution request.

¶13   Separately, Clark contends that he was denied the effective assistance of trial counsel when counsel failed to object to the State's cross-examination of him as to his conviction for child neglect, or to object to the portion of the State's closing argument addressing Clark's history of violent conduct based on that conviction.  Clark argues that, after he testified accurately on direct examination to the number of his prior convictions, the State was not permitted to question him as to the details of those convictions.  *See* WIS. STAT. § 906.09(1) (in challenging a witness's character for truthfulness, a party may ask the witness whether he or she has ever been convicted of a crime or adjudicated delinquent and how many times, and if the answers are consistent with a previous determination of the circuit court, "then no further inquiry may be made unless it is for the purpose of rehabilitating the witness's character for truthfulness.")  Clark argues that the State impermissibly asked Clark whether he had been convicted of child neglect for hitting his son with a belt.  He also contends that the State impermissibly argued from the evidence of Clark's conviction based on hitting his son with a belt that Clark had a general propensity for violence.  We reject both claims of ineffective assistance of counsel.

¶14    A claim of ineffective assistance of counsel must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* If a defendant has failed to make a showing on either prong, a reviewing court may reject the ineffective assistance of counsel claim without reviewing the other prong. *Id.* at 697. Whether trial counsel's performance was deficient, and whether that deficiency prejudiced the defense, are questions of law subject to de novo review. *State v. Franklin*, 2001 WI 104, ¶12, 245 Wis. 2d 582, 629 N.W.2d 289.

¶15    We conclude, first, that Clark has not established that his counsel's performance was deficient by failing to object to the State's cross-examination of him as to his criminal conviction based on hitting his son with a belt. In context, the State's questioning was in response to testimony elicited by defense counsel, and therefore the circuit court would likely have overruled an objection to the cross-examination. *See State v. Harvey*, 2006 WI App 26, ¶40, 289 Wis. 2d 222, 710 N.W.2d 482 ("A party who opens the door on a subject cannot complain if the opposing party offers evidence on the same subject to explain, counteract, or disprove the evidence."). We now explain further.

¶16    Defense counsel elicited testimony from A.C. on cross-examination that A.C. had lied when she testified, under oath, at Clark's revocation hearing that the children were not afraid of Clark. Defense counsel then asked Clark on direct about his disciplinary philosophy. Clark testified that he was "a pretty stern

7

parent," and that his children were not always happy with him, but that he was trying to make them better people. Clark also testified that he did not strike any of the children during the October 2017 incident, contrary to the trial testimony of one of the children that Clark had slapped that child in the face. It was only after all of this testimony that the State asked Clark on cross-examination if the revocation hearing at which A.C. had testified was in connection with Clark's criminal conviction for hitting his son with a belt, and Clark confirmed that it was.

¶17     Because defense counsel opened the door to the issues of Clark's disciplinary philosophy, violence (or lack thereof) toward his children, and his prior revocation hearing, the State was allowed to pursue the same line of inquiry. *See id.* The State's questioning as to Clark's prior conviction based on hitting his son with a belt was on the same subjects introduced by the defense, and therefore a defense objection to the cross-examination would likely have been overruled.

¶18     We conclude, second, that Clark has failed to show prejudice from his counsel's failure to object to any improper contention by the State in closing argument as to Clark's alleged propensity for violence. In light of the evidence at trial, we conclude that there is not a reasonable probability that Clark would have been found not guilty of the two charges of sexual assault, misdemeanor battery, and disorderly conduct based on the October 2017 incident absent the aspect of the State's closing argument asserting that Clark had been violent toward his children in the past. *See* **Strickland**, 466 U.S. at 695 (question of prejudice following a jury trial "is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt"). We now explain further.

¶19     A.C. testified that, during the October 2017 incident, Clark: walked into their house and started screaming at two of the children; threw a glass vase at the wall, breaking it; hit a water bottle out of a child's hand, grabbed the child by the collar, and pushed him up against a wall; grabbed A.C. by the back of the neck and pushed her onto the floor; punched a light socket, breaking it; struck A.C. with a closed fist on the head three or four times; and had non-consensual oral and anal intercourse with A.C.  The State also played the video recording of the sexual acts captured on A.C.'s cell phone.  Additionally, one of the children testified that Clark hit A.C. "a lot" and slapped that child during the October 2017 incident.

¶20     Clark testified on direct that he slapped A.C. over the course of their relationship, including during the October 2017 incident, but that the sexual acts were consensual.  Thus, the jury had already heard from A.C., one of her children, and from Clark himself, that Clark had been violent toward A.C., including during the October 2017 incident.  They also heard admissible evidence that Clark had been violent toward the children as well.  There is no reasonable probability that, absent the State's argument that Clark was violent toward his children based on his conviction for hitting his son with a belt, the jury would have had a reasonable doubt as to the sexual assault, misdemeanor battery, and disorderly conduct charges.

¶21     Finally, Clark contends that the two charges for third-degree sexual assault are multiplicitous.  He contends that the two offenses are identical in law and fact, and thus he had a constitutional right to be convicted of, at most, only one count of sexual assault.  We are not persuaded.

¶22     Charges that are multiplicitous violate the double jeopardy clauses of the United States and Wisconsin Constitutions.  *See **State v. Steinhardt***, 2017 WI

62, ¶13, 375 Wis. 2d 712, 896 N.W.2d 700. To determine whether charges are multiplicitous, we look to "whether the charged offenses are identical in law and fact." *Id.*, ¶14 (citations omitted). "Whether a multiplicity violation exists in a given case is a question of law that we review de novo." *State v. Koller*, 2001 WI App 253, ¶32, 248 Wis. 2d 259, 635 N.W.2d 838.

¶23     There is no dispute that the two counts of third-degree sexual assault in this case are identical in law. Thus, we turn to the determinative issue, that is, whether the two charges are identical in fact. "The 'identical in fact' inquiry ... involves a determination of whether the charged acts are 'separated in time or are of a significantly different nature.'" *Id.*, ¶31 (quoting *State v. Eisch*, 96 Wis. 2d 25, 31, 291 N.W.2d 800 (1980)). "When analyzing whether acts are significantly different in nature, '[t]he question is whether the elements, which are legally identical, are sufficiently different in fact to demonstrate that a separate crime has been committed.'" *Steinhardt*, 375 Wis. 2d 712, ¶20 (quoted source omitted).

¶24     Clark argues that the facts in this case are analogous to those in *State v. Hirsch*, 140 Wis. 2d 468, 410 N.W.2d 638 (Ct. App. 1987), in which this court concluded that three sexual assault charges were multiplicitous. The complaint in *Hirsch* alleged that Hirsch had touched the victim's vaginal area, then her anal area, and then her vaginal area a second time. *See id.* at 470. We concluded that the three acts were "not 'so significantly different in fact that they may be properly denominated separate crimes.'" *Id.* at 474 (quoted source omitted). We explained that "the alleged actions are extremely similar in nature and character" and that we could not conclude "that the touchings were not part of the same general transaction or episode." *Id.* at 474-75. We also explained that it was "apparent that the episode took no more than a few minutes" and that "[t]here was apparently little, if any, lapse of time between the alleged acts." *Id.* at 475. Thus, "[g]iven

the short time frame," we could not conclude that "the defendant had sufficient time for reflection between the assaultive acts to again commit himself." ***Id.***

¶25    Clark argues that here, as in ***Hirsch***, the conduct that was charged as two separate sex crimes was in fact one episode involving sexual conduct. He points to A.C.'s testimony that all of the sexual conduct took a total of five to ten minutes. Clark argues that the break in time between the two charged sexual acts was not sufficient for Clark to reflect on his actions. We disagree with this argument based on the applicable case law.

¶26    Our supreme court has held that charging a defendant with multiple counts of sexual assault based on different types of sexual intercourse within one incident does not violate double jeopardy. *See **Eisch***, 96 Wis. 2d at 27. Separate charges based on separate types of sexual intercourse over a short time frame do not violate double jeopardy because the different types of bodily intrusion are "of a significantly different nature." ***Id.*** at 27-33. Additionally, when each sexual act requires "a separate volitional act" and "a new volitional departure in the defendant's course of conduct," the acts are different in fact. ***Id.*** at 36.

¶27    Here, A.C. testified that Clark inserted his penis into her mouth, then instructed her to change positions, and then put on a condom and inserted his penis into her anus. We conclude that the two sexual assaults were "of a significantly different nature." *See **id.*** at 31; *see also **Harrell v. State***, 88 Wis. 2d 546, 573, 277 N.W.2d 462 (Ct. App. 1979) ("Invasion of different intimate parts of the victim's body demonstrates [different] kinds and means of sexual abuse or gratification and therefore different acts."). We also conclude that each of two different sexual acts, separated by having A.C. change positions and Clark putting on a condom, required "a separate volitional act." ***Eisch***, 96 Wis. 2d at 36.

11

¶28 Contrary to Clark's contention, the facts in this case are not comparable to those in *Hirsch*. The touchings in *Hirsch*, 140 Wis. 2d at 474-75, were "extremely similar in nature and character" and "part of the same general" course of conduct. In contrast, the separate acts of sexual intercourse in this case were significantly different in nature, involving intrusions into different intimate parts of A.C.'s body. While the two acts involved the same two people, in the same location, and occurred relatively close in time, each act by Clark "required a new volitional departure" in his course of conduct. Accordingly, we conclude that the two charged acts are sufficiently different in fact that Clark could be convicted of two separate crimes consistent with the constitutional protections against double jeopardy.[3] We affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[3] Clark does not argue that the legislature did not intend to allow cumulative punishments for the two offenses on these facts. *See State v. Davidson*, 2003 WI 89, ¶¶32-33, 263 Wis. 2d 145, 666 N.W.2d 1.